IRENE HALLECK, Plaintiff-Appellant, v. COASTAL BUILDING MAINTE-
NANCE COMPANY, Defendant-Appellee and Third-Party Plaintiff (Marshall Field and Company, Third-Party Defendant-Appellee).

Second District   No. 2—94—0065

———

Opinion filed March 13, 1995.—Rehearing denied April 12, 1995.

DOYLE, J., specially concurring.

Riccardo A. DiMonte and Andrew D. Werth, both of DiMonte, Shostok & Lizak, of Park Ridge, for appellant.

D. Kendall Griffith and Bruce L. Carmen, both of Hinshaw & Culbertson, of Chicago, for appellee Coastal Building Maintenance Company.

Richard A. Barrett, Jr., and Therese S. Seeley, both of Cassiday, Schade & Gloor, of Wheaton, and Cassiday, Schade & Gloor and Lynn D. Dowd, of Levin, McParland, Phillips, Leydig & Haberkorn, both of Chicago, for appellee Marshall Field and Company.

JUSTICE BOWMAN delivered the opinion of the court:
Plaintiff, Irene Halleck, brought this action against defendant,

Coastal Building Maintenance Corporation (Coastal), seeking to recover damages for injuries she suffered in a workplace slip-and-fall incident. Coastal filed a third-party complaint for contribution against plaintiff's employer, Marshall Field and Company (Marshall Field). Prior to trial, plaintiff settled her worker's compensation claim against Marshall Field. The cause proceeded to trial, and a jury assessed plaintiff's damages at $240,000, but reduced that figure by 50% to account for her contributory negligence. The trial court entered judgment on this verdict, resulting in recoverable damages of $120,000. Coastal then filed a motion to set off the worker's compensation payments made by Marshall Field to plaintiff, which totaled $119,018.99. The trial court granted this motion and reduced the judgment to $981.01. This appeal followed.

Plaintiff makes two principal contentions on appeal: (1) the trial court committed a number of errors at trial concerning the admissibility of evidence; and (2) the trial court erred when it found plaintiff's settlement with Marshall Field to be in good faith and allowed Coastal to set off plaintiff's worker's compensation recovery against the final judgment. Plaintiff seeks a new trial based on the alleged evidentiary errors, as well as vacatur of the trial court's order granting Coastal a setoff.

Plaintiff testified to the following facts at trial. On Sunday April 9, 1989, at 10:30 a.m., she arrived for work at Marshall Field's Oak Brook store, where she was a sales associate in the second-floor fur salon. To reach the fur salon, plaintiff rode the escalator to the second floor. At the top of the escalator, she met Jerry Smith, a Coastal employee. Coastal is responsible for housekeeping and floor care at Marshall Field's. Smith was waxing the marble tile that runs down the center of the second floor's east-west corridor. The east-west corridor is 300 feet long and 8 feet wide. The fur salon is situated at the opposite end of the corridor from the escalator.

Plaintiff testified that she said good morning to Smith. After they exchanged pleasantries, Smith asked plaintiff what time the other sales associates were due to arrive, and she replied that they would arrive around 10:45 a.m. Plaintiff then proceeded down the corridor toward the fur salon. She avoided the wet portion of the marble corridor by walking on the carpeting which ran parallel to it until she reached the fur salon. Over the next 10 to 15 minutes, while preparing to open the store, plaintiff made three trips to and from the stockroom, each time crossing the marble floor adjacent to the fur salon. On each of these three trips, the floor was dry. At no time did she observe any "wet floor" signs or see Smith waxing the floor. On her fourth trip across the floor, her feet slipped out from under her,

and she fell. Immediately after her fall, Smith rushed over to her and, according to plaintiff, said "I'm sorry, I didn't know you would be leaving the fur salon." Plaintiff testified that she had slipped on "something wet" and that after her fall there was a wet, sticky substance on her clothes. On cross-examination, plaintiff recalled telling an investigator that, when she first encountered Smith at the top of the escalator, he told her to be careful because the floor was wet near the escalator. She also recalled that he said the floor was dry at the other end, and she replied that she would be careful.

Shortly after plaintiff's fall, Jeanette Ertl, a Marshall Field sales associate who also worked on the second floor, came over to assist plaintiff. At trial, Ertl corroborated plaintiff's testimony that there were no signs in the marble corridor indicating the floor was wet and testified to the presence of a sticky substance on plaintiff's clothing. Jerry Smith did not testify at trial, as neither party was able to locate him or serve him with a subpoena.

Plaintiff first contends the trial court committed a number of reversible errors regarding the admission of evidence, each of which warrants a new trial. The first evidentiary ruling which plaintiff challenges is the trial court's decision to strike her testimony about statements allegedly made by Smith before and after the accident. The statements in issue are (1) Smith's question as to what time the other sales associates would arrive, followed by plaintiff's response; (2) Smith's statement to plaintiff that the floor was wet at the end of the corridor nearest the escalator, but dry at the other end; and (3) Smith's post-accident statement "I'm sorry, I didn't know you would be leaving the fur salon."

Preliminarily, we note that the trial court struck only two of the three statements allegedly made by Smith to plaintiff. Plaintiff claims that, in addition to Smith's other statements, the trial court struck Smith's statement that the floor was wet near the escalator, but dry at the other end of the corridor. However, the record does not support this claim. That statement, unlike the other two, did not come into evidence during plaintiff's direct examination. Instead, it was elicited by Coastal on cross-examination. In instructing the jury as to which statements it was striking, the trial court expressly stated that it was striking only the two conversations elicited during plaintiff's direct examination. Thus, Smith's statement that the floor was wet near the escalator, but dry at the other end, which came into evidence separately from the other two statements, was never stricken from the record. Accordingly, we address plaintiff's claims of error only as they relate to (1) Smith's question about the arrival time of the other sales associates and plaintiff's response; and (2) Smith's post-accident apology.

Plaintiff argues that the decision to strike these two statements as hearsay was error. Although the admission of evidence is ordinarily within the sound discretion of the trial court, the initial determination that a particular statement constitutes hearsay is a legal issue which does not require any exercise of discretion, fact finding, or evaluation of credibility. (*People v. Aguilar* (1994), 265 Ill. App. 3d 105, 109.) The trial court exercises its discretion as to admissibility only after it has made a determination of whether a statement is hearsay. (See *Aguilar*, 265 Ill. App. 3d at 109.) Thus, a trial court's determination that a particular statement is hearsay is subject to a *de novo* standard of review. *Aguilar*, 265 Ill. App. 3d at 109.

Plaintiff argues that Smith's query as to when the other associates were to arrive, and her response, should not have been stricken because they were not offered for the truth of the matter asserted and therefore do not constitute hearsay. Hearsay is defined as "testimony in court or written evidence, of a statement made out of court, such statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter." (*People v. Carpenter* (1963), 28 Ill. 2d 116, 121; see also *Kochan v. Owens-Corning Fiberglass Corp.* (1993), 242 Ill. App. 3d 781, 806.) An out-of-court statement offered for some independent purpose, rather than for the truth of the matter asserted, is not hearsay. *Kochan*, 242 Ill. App. 3d at 806; *Thornton v. University Civil Service Merit Board* (1987), 154 Ill. App. 3d 1016, 1021.

Plaintiff asserts that she did not offer this conversation to show that the other sales associates did, in fact, arrive at 10:45 a.m. Instead, she maintains, she offered it to show that, at the time of plaintiff's arrival at work, Smith intended to continue waxing the floor. Plaintiff contends that the only possible reason for Smith's inquiry as to the arrival time of the other sales associates was his concern about the timing of the waxing. If he had completed his waxing, plaintiff reasons, "his question would make no sense." According to plaintiff, Smith's question and her answer are probative of one of the central issues at trial—whether Smith continued waxing the floor after plaintiff's arrival. She argues the jury should have been allowed to consider this testimony as evidence that he did, in fact, wax the floor after plaintiff's arrival, but failed to warn her that he had done so.

Nothing in the record indicates the conversation was offered to prove the arrival time of the other associates. As a result, we must agree with plaintiff that the conversation, offered as evidence that

Smith waxed the floor after plaintiff's arrival, was not hearsay. However, an erroneous evidentiary ruling does not require reversal unless the error was prejudicial and affected the outcome of the trial. (*Bafia v. City International Trucks, Inc.* (1994), 258 Ill. App. 3d 4, 10.) Accordingly, we must evaluate the degree of prejudice caused plaintiff by the exclusion of this testimony in light of plaintiff's other claims of evidentiary error.

Plaintiff's next assertion of error concerns the statement allegedly made by Jerry Smith to plaintiff after her fall. Plaintiff testified that immediately after she fell, Smith rushed over to her and said: "I'm sorry, I didn't know you would be leaving the fur salon." On appeal, plaintiff contends the trial court erred in striking the statement because (1) it was a party admission; (2) it qualified as an excited utterance; and (3) it constituted a declaration against pecuniary interest. Because we conclude the statement was properly admissible as a party admission, we need not address plaintiff's alternative theories.

In striking the statement "I'm sorry, I didn't know you would be leaving the fur salon," the court found that it could not be a party admission because, as a janitor, Smith lacked the authority to bind his employer as to fault. Plaintiff argues that this ruling was based on a misunderstanding of the law regarding party admissions and that whether Smith had authority to bind the corporation is irrelevant. We agree and find that the trial court misapplied the party admission exception to the hearsay rule.

Traditionally, whether a statement by an employee concerning a matter within the scope of his employment is an admission of the employer was determined by the agency test: whether the statement was authorized by the employer. The result of this traditional rule was that courts generally found damaging statements to be outside the scope of authority, even in cases involving relatively high-level employees. (M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 802.9, at 684-86 (6th ed. 1994) (Handbook), citing *Hodgerson v. St. Louis, Chicago & St. Paul R.R. Co.* (1896), 160 Ill. 430.) More recent cases have recognized that the problem with this rule is that employees are rarely hired to make damaging statements. See *Taylor v. Checker Cab Co.* (1975), 34 Ill. App. 3d 413, 419-20 (noting that a driver is hired to drive, not to talk).

In response to this problem, a modern trend has developed, both in Illinois and elsewhere. Under the modern rule, the authority to speak is not of concern. Since employees are rarely given the authority to make damaging statements, the test is whether the statement concerns matters within the scope of the employment, not whether the employee has the authority to make the statement. (*Miller v.*

*J.M. Jones Co.* (1992), 225 Ill. App. 3d 799, 803.) Thus, Illinois cases which adhere to the "broader, better, and clearly current view" hold that a statement is a party admission if it is made during the existence of the employment relationship and concerning matters within the scope of employment. Handbook, § 802.9, at 685; *Rinchich v. Village of Bridgeview* (1992), 235 Ill. App. 3d 614, 626-27; *Miller*, 225 Ill. App. 3d at 803.

Applying this test to the present case, we find Smith's statement, "I'm sorry, I didn't know you would be leaving the fur salon," to be a party admission. The statement was made while Smith was an employee of Coastal and concerns matters within the scope of his employment, *i.e.*, the waxing of the floor. The statement was not offered, as the trial court stated, to "bind the corporation as to fault." Rather, it was offered as additional relevant evidence tending to prove an aspect of plaintiff's theory of the case: that Smith applied a coat of wax to the floor adjacent to the fur salon subsequent to plaintiff's arrival at work on the day of the accident.

*Waechter v. Carson Pirie Scott & Co.* (1988), 170 Ill. App. 3d 370, cited by Coastal, does not require a different result. In *Waechter*, the plaintiff was injured when an escalator on which she was riding in a Carson's department store stopped suddenly, causing her to fall. Immediately after the fall, the plaintiff reported the incident to an unidentified customer service clerk employed by Carson's who, according to the plaintiff, said: " 'Oh, no, not again. The escalator repairman has been out here I don't know how many times the past two weeks.' " The trial court excluded plaintiff's testimony regarding the clerk's statement as hearsay. The jury returned a verdict for Carson's, and the plaintiff appealed, contending the statement was admissible to show notice to Carson's of the dangerous condition of the escalator. *Waechter*, 170 Ill. App. 3d at 372.

The *Waechter* court held that the clerk's statement was not admissible to show notice to Carson's. The court stated that, to admit this statement as evidence of notice, the plaintiff had to establish that the clerk was the employee of Carson's, the statement related to matters within the clerk's authority, and the clerk made the statement by virtue of that authority. (*Waechter*, 170 Ill. App. 3d at 374-75, citing *Kapelski v. Alton & Southern R.R.* (1976), 36 Ill. App. 3d 37, 42.) The court held that the plaintiff had failed to lay a proper foundation as to whether the clerk's statement related to matters within the scope of her authority and whether she spoke by virtue of her authority. (*Waechter*, 170 Ill. App. 3d at 375.) In *Waechter*, the critical issue was whether Carson's had notice of a dangerous condition, *i.e.*, the malfunctioning escalator. Whether the statement was a

party admission was not in issue in *Waechter*. The court expressly noted that "[the] [p]laintiff [did] not claim that the customer service clerk's statement qualified as a vicarious admission by a party opponent [citation], and she did not offer it as such." *Waechter*, 170 Ill. App. 3d at 374.

*Waechter* is distinguishable from the case at bar. In the instant case, unlike *Waechter*, the critical issue at trial was not the employer's notice of a dangerous condition. Rather, the critical issue was whether Jerry Smith was negligent. If he was negligent, the jury could impute his negligence to Coastal based on the principle of *respondeat superior*. (*Marco v. County of McHenry* (1991), 218 Ill. App. 3d 503, 505.) Whether Smith's negligence could be imputed to Coastal for purposes of liability is a question entirely separate from the admissibility of his statement, "I'm sorry, I didn't know you would be leaving the fur salon," as a party admission. Unlike the statement at issue in *Waechter*, Smith's statement was not offered to show notice to Coastal of any condition or to prove that Smith's negligence was attributable to Coastal. It was offered as additional, relevant evidence that, following plaintiff's arrival at work on April 9, 1989, Smith waxed the marble floor adjacent to the fur salon without warning her. Whether that negligence is imputed to Coastal based on *respondeat superior* is wholly distinct from the question of whether Smith's statement was a party admission.

Thus, by focusing on whether Smith had the authority to bind his employer as to fault, the trial court confused the issues of Coastal's vicarious liability for Smith's negligence and the admissibility of his statement under the party-admission exception to the hearsay rule. Whether Coastal was vicariously liable for Smith's conduct was a factual issue for the jury (see *Marco*, 218 Ill. App. 3d at 505), not a question of evidence law. By contrast, whether Smith's statement was a party admission required the trial court to determine (1) whether Smith made the statement while he was employed by Coastal; and (2) whether the statement concerned matters within the scope of his employment. (*Bafia*, 258 Ill. App. 3d at 9-10.) Because we conclude both of these requirements were satisfied, we find that the trial court's decision to strike this statement was erroneous.

Having concluded that the trial court erroneously struck the pre-accident conversation between Smith and plaintiff, and Smith's post-accident apology, we must address the degree of prejudice caused. A reviewing court will grant reversal based on evidentiary rulings only where the error was substantially prejudicial and affected the outcome of the trial. (*Burns v. Michelotti* (1992), 237 Ill. App. 3d 923, 938; *Leary v. Eng* (1991), 214 Ill. App. 3d 279, 284-85.) Conversely,

where it appears an error did not affect the outcome of the trial, or where the reviewing court can see from the entire record that the error did not result in substantial prejudice, the judgment will not be disturbed. (*Cairns v. Hansen* (1988), 170 Ill. App. 3d 505, 511.) The burden is on the party seeking reversal to establish prejudice. *Burns*, 237 Ill. App. 3d at 938.

With respect to the preaccident conversation between Smith and plaintiff, we find that any prejudice caused by the exclusion of this evidence was minimal, at best. The meaning and import of the question "what time do the other sales associates come in" and plaintiff's response that they would arrive around 10:45 a.m. is far less obvious than plaintiff contends. According to plaintiff, the question only makes sense as a proof that Smith intended to continue waxing the floor, and it shows he was concerned with the arrival time of the other employees. The question, however, could just as easily be viewed as a continuation of the small talk and pleasantries that Smith and plaintiff exchanged when she first reached the top of the escalator. Contrary to plaintiff's assertion, the mere fact that Smith inquired as to the starting time of the other associates does not necessarily give rise to a compelling inference that Smith intended to, and did, continue waxing the floor.

●1 In short, we conclude the effect of the exclusion of this testimony was inconsequential. We may not reverse a judgment based on an allegation of evidentiary error unless plaintiff has demonstrated that the error materially affected the outcome of the trial. (*Cerveny v. American Family Insurance Co.* (1993), 255 Ill. App. 3d 399, 416.) In view of the ambiguous nature of Smith's question, we cannot conclude its exclusion materially affected the outcome of the trial.

With respect to Smith's post-accident apology, "I'm sorry, I didn't know you would be leaving the fur salon," we find that it was essentially cumulative of other evidence admitted at trial and that its exclusion, while erroneous, does not require reversal. Plaintiff argues the above statement was critical to her case because it is evidence that, after plaintiff's arrival at work on April 9, 1989, Smith waxed the marble corridor adjacent to the fur salon without warning her, causing her to slip and fall. Although Smith's statement may, in fact, circumstantially support this proposition, she produced ample other evidence on the same point, rendering the statement cumulative.

For example, plaintiff's testimony indicated that, after arriving at work on the day in question, she made three trips across the marble floor and that the floor was dry each time. The fourth time she crossed the floor, she slipped on "something wet," her feet slid

out from under her as though she was on ice, and she fell. She testified that after the fall her stocking and leg were wet and covered with what she described as a sticky substance. She further testified that there were no warning signs posted and Smith did not verbally warn her that he was waxing the floor adjacent to the fur salon. This testimony was corroborated by one of her co-workers, Jeanette Ertl. Ertl testified that immediately after plaintiff fell she walked over to the site of the fall and attempted to assist plaintiff. Ertl noticed that the floor was "very shiny," that it was wet, and that plaintiff's skirt and panty hose were covered with a wet, gooey substance. Ertl stated that she saw no warning signs on the marble floor.

The above testimony tends to prove the same fact Smith's post-accident statement was offered to prove: that at some point while plaintiff was walking between the fur salon and the stockroom, Smith waxed the marble floor without posting warning signs or verbally warning plaintiff of the danger. Thus, although the trial court's decision to strike plaintiff's testimony regarding Smith's post-accident statement was erroneous, the excluded testimony was cumulative of other evidence which the jury heard. We conclude, therefore, that the exclusion of this testimony does not constitute reversible error.

Plaintiff's next claim of evidentiary error concerns the trial court's decision to exclude from evidence (1) a 12-inch square floor tile, purportedly similar to the tile in the marble floor where plaintiff slipped; and (2) a container of floor wax similar to the wax used by Smith on the day of the accident. Plaintiff intended to have a witness pour some of the wax onto the tile to physically demonstrate for the jury the viscosity and invisibility of the wax when applied to a glossy floor tile.

The admissibility of an experiment depends on whether the conditions of the experiment are substantially similar to the actual circumstances of the case, although the conditions need not be identical. (*Ford v. City of Chicago* (1985), 132 Ill. App. 3d 408, 416.) The admissibility of experimental evidence is within the sound discretion of the trial court, whose decision will not be reversed absent a clear abuse of discretion. *Brennan v. Wisconsin Central Ltd.* (1992), 227 Ill. App. 3d 1070, 1088; *People v. Wills* (1987), 153 Ill. App. 3d 328, 342.

■ In deciding to preclude plaintiff from conducting her floor wax experiment before the jury, the trial court noted there was no evidence as to whether the floor tile plaintiff sought to use in the experiment was substantially similar to the tile on which plaintiff slipped; whether Smith applied the wax full strength or diluted it; whether he applied it with a mop, electric buffer, scrub brush, or rag; or how much wax he used relative to the floor space. In sum, the court

concluded that the conditions of plaintiff's proposed experiment were not substantially similar to the conditions on the day of the accident. Our review of the record shows plaintiff was unable to lay a sufficient foundation regarding the above factors, and we find no abuse of discretion in excluding this experiment.

Plaintiff's final claim of evidentiary error concerns the cross-examination of one of her treating physicians, Dr. Greco. In cross-examining Dr. Greco, Coastal was permitted, over plaintiff's objections, to question him about a report written by a nontestifying doctor, Boone Brackett, which was in Dr. Greco's file. Although Dr. Greco stated that he reviewed the Brackett report and agreed with certain aspects of Dr. Brackett's diagnosis, he testified that he disagreed with the report's ultimate conclusion that plaintiff could resume normal work and cease medical treatments. Dr. Greco stated that he neither incorporated Dr. Brackett's findings into his report nor relied on them as a basis for his treatment of plaintiff. The trial court allowed Coastal to cross-examine Dr. Greco regarding the contents of the Brackett report, but instructed the jury that Dr. Brackett's report was not to be considered as evidence and could only be considered for the limited purpose of evaluating "what [Dr. Greco] reviewed in reaching his ultimate diagnosis and opinions."

On appeal, plaintiff contends the trial court erred in allowing Coastal to cross-examine Dr. Greco regarding Dr. Brackett's report. According to plaintiff, the fact that Dr. Greco testified he did not rely on the Brackett report in forming his opinion precluded Coastal from cross-examining him on its contents, regardless of whether Dr. Greco reviewed the report.

On cross-examination, counsel may probe an expert witness' qualifications, experience and sincerity, the weaknesses in the basis of his opinions, the sufficiency of his assumptions, and the general soundness of his opinion. (*People v. Page* (1993), 156 Ill. 2d 258, 275.) The facts, data, and opinions which form the basis of the expert's opinion, but which are not disclosed on direct examination, may be developed on cross-examination. (*Piano v. Davison* (1987), 157 Ill. App. 3d 649, 671.) An expert may be cross-examined on material reviewed by the expert, but upon which he did not ultimately rely. (*People v. Pasch* (1992), 152 Ill. 2d 133, 179, citing *Piano*, 157 Ill. App. 3d at 671-72.) Cross-examination may be directed toward explaining, modifying, or discrediting the expert's testimony and may be used to ascertain what factors he took into account and what factors he discarded in arriving at his conclusions. (*Pasch*, 152 Ill. 2d at 179; *People v. Fields* (1988), 170 Ill. App. 3d 1, 14.) A trial court's determination regarding the scope of cross-examination will not be disturbed

on appeal absent an abuse of discretion. *Piano*, 157 Ill. App. 3d at 671.

As the above-cited authorities demonstrate, the scope of cross-examination is not defined by material actually relied upon by an expert in forming his conclusions. Rather, a trial court may permit cross-examination on materials reviewed by the expert, but upon which he did not choose to rely. Thus, the critical question in the instant case is whether Dr. Greco read and was aware of Dr. Brackett's report. Our reading of his testimony establishes that although he disagreed with its ultimate conclusions, Dr. Greco did, in fact, review Dr. Brackett's report. Coastal was properly allowed to cross-examine Dr. Greco as to which aspects of the report he accepted and which aspects he rejected; we find no abuse of discretion in this ruling.

Plaintiff's final claim of error relates to the court's order entered April 16, 1993, which approved the settlement between plaintiff and Marshall Field as being in good faith and recognized Field's waiver of its worker's compensation lien. Plaintiff also argues the subsequent post-judgment setoff given Coastal for the amount of that lien was erroneous.

On October 26, 1992, approximately 19 months after plaintiff filed her complaint against Coastal, Coastal filed a third-party contribution action against plaintiff's employer, Marshall Field. In February 1993, prior to the trial of plaintiff's action against Coastal, Marshall Field and plaintiff agreed to a settlement of her worker's compensation claim which was then pending against Marshall Field. The settlement involved payment to plaintiff of medical expenses, lost earnings, and a lump sum of $75,000, along with a waiver by Marshall Field of its subrogation rights against plaintiff. By the express terms of the agreement, Marshall Field waived the entire worker's compensation lien it had against plaintiff's recovery in the action against Coastal. The total value of the lien, including the lump sum payment, was $119,081.99.

On April 16, 1993, Marshall Field presented the trial court with a motion for a good-faith finding pursuant to section 2(c) of the Joint Tortfeasor Contribution Act (Contribution Act) (740 ILCS 100/2(c) (West 1992)). Without objection from plaintiff, Marshall Field's motion was granted. The court's order granting the motion approved the settlement between plaintiff and Marshall Field as being in good faith pursuant to the Contribution Act; it found that Marshall Field's *tort liability* was extinguished; and, finally, it dismissed the third-party complaint with prejudice. The cause proceeded to a jury trial, resulting in an award of $120,000 in recoverable damages to plaintiff.

Following the trial, Coastal filed a motion to set off the worker's compensation lien amount of $119,018.99 from the judgment of $120,000, which was granted.

On appeal, plaintiff argues that the April 16, 1993, order should be vacated because (1) the trial court's good-faith finding was erroneous; (2) there was no consideration supporting the settlement between plaintiff and Marshall Field; and (3) Coastal should not have been allowed to set off plaintiff's worker's compensation recovery from the judgment against it. We find plaintiff's contentions to be without merit.

The Contribution Act allows a tort-feasor who settles with a claimant in good faith to be discharged from liability for contribution to any other tort-feasors. (740 ILCS 100/2(c), (d) (West 1992); *Alvarez v. Fred Hintze Construction* (1993), 247 Ill. App. 3d 811, 815.) An employer from whom contribution is sought can make a good-faith settlement of a worker's compensation claim with its employee and thus be discharged from contribution liability to nonsettling defendants. (*Wilson v. The Hoffman Group, Inc.* (1989), 131 Ill. 2d 308, 318-19; *Higginbottom v. The Pillsbury Co.* (1992), 232 Ill. App. 3d 240, 247.) Based on the above authority, it is clear that the dismissal of the third-party claim against Marshall Field was permissible, provided the settlement with plaintiff was made in good faith. Our review of the record and the applicable case law belies plaintiff's claim that plaintiff's settlement with Marshall Field was not made in good faith.

The Contribution Act does not define the term "good faith." (*In re Guardianship of Babb* (1994), 162 Ill. 2d 153, 161.) Whether an agreement was made in good faith depends on all of the circumstances surrounding the settlement. (*Babb*, 162 Ill. 2d at 162; *Wilson v. The Hoffman Group, Inc.* (1989), 131 Ill. 2d 308, 318.) The determination of whether a settlement is in good faith is a matter properly left to the discretion of the trial court, and a trial court's finding as to good faith will not be reversed on appeal absent an abuse of discretion. *Babb*, 162 Ill. 2d at 162; *Smith v. Texaco, Inc.* (1992), 232 Ill. App. 3d 463, 467.

■ In order for a settlement to be in good faith, the plaintiff must receive some net consideration for the settlement agreement. (*Higginbottom*, 232 Ill. App. 3d at 257.) Courts have consistently found settlements in good faith where, as here, the plaintiff received a lump sum amount and a waiver of the employer's worker's compensation lien. (*E.g.*, *Wilson*, 131 Ill. 2d at 319; *Alvarez*, 247 Ill. App. 3d at 816; *Stacy v. Ametek, Inc.* (1990), 205 Ill. App. 3d 58, 60-61.) The record in the present case establishes—and plaintiff admits in her

brief—that in consideration of her acceptance of a $75,000 lump sum payment, Marshall Field agreed to waive its right of subrogation under section 5(b) of the Workers' Compensation Act. (820 ILCS 305/ 5(b) (West 1992).) By waiving its subrogation rights under section 5(b), Marshall Field gave up its right to seek reimbursement from plaintiff for any amount up to $119,018.99 paid to her by Coastal. Because an employer's waiver of its worker's compensation lien constitutes adequate consideration under section 2(c) of the Contribution Act, we reject plaintiff's contention that the settlement agreement with Marshall Field was not in good faith because it was unsupported by consideration. See *Stacy*, 205 Ill. App. 3d at 60-61.

■ Finally, we reject plaintiff's claim that the trial court erred by setting off her worker's compensation recovery from the verdict against Coastal. This issue has been addressed by our supreme court in *Wilson v. The Hoffman Group, Inc.* (1989), 131 Ill. 2d 308. There, the court framed the question as whether under section 2(c) of the Contribution Act the amount of a worker's compensation lien, waived by a plaintiff's employer, should be set off against any subsequent judgment obtained by the plaintiff. The court answered this question in the affirmative, noting that the law in Illinois is that a plaintiff shall have only one recovery for an injury. (*Wilson*, 131 Ill. 2d at 321.) The court then concluded that if a setoff is denied, the plaintiff would receive double recovery for the same injury because he would retain both compensation from the employer in the form of worker's compensation benefits and identical damages from the other defendant. (*Wilson*, 131 Ill. 2d at 322.) Such double recovery, according to the supreme court, is exactly what section 2(c) of the Contribution Act is intended to prevent. (*Wilson*, 131 Ill. 2d at 322.) In view of *Wilson*, plaintiff's contention that the setoff of her worker's compensation recovery from the damage award against Coastal was erroneous is unpersuasive.

Accordingly, for the reasons stated above, we affirm the judgment of the circuit court of Du Page County.

Affirmed.

COLWELL, J., concurs.

JUSTICE DOYLE, specially concurring:

Although I agree with most aspects of the majority opinion, I specially concur because I am concerned that the analysis of the hearsay issue may create a potential for confusion.

In *Waechter*, this court plainly embraced "the well-established

foundation requirements which must be met prior to the introduction of an agent's statement as an admission by her employer," as including the authority to speak for the employer. (*Waechter*, 170 Ill. App. 3d at 374.) It then purported to rely on this requirement as a basis for its refusal to impute the clerk's *knowledge* to her employer, as urged by plaintiff under a state of mind nonhearsay theory. Although this seems to me to mix apples with oranges, it does not detract from the court's pronouncement of the traditional foundational requirements for admitting an agent's statement as the employer's admission. I agree, therefore, with Cleary's observation that *Waechter* is an adherent to the traditional, common-law requirements, including the authority to speak for the employer. Handbook, § 802.9, at 686.

The trial court, in the present case, was correct in following *Waechter* as second district precedent that the authority to speak is a foundational prerequisite to the introduction against Coastal of Smith's "apology" to plaintiff as an admission by a party opponent. In light of the trend in recent appellate decisions following the lead of Federal Rule of Evidence 801(d)(2)(D), I agree with the majority that it is time to abandon the authority-to-speak element. I find no decision of our supreme court which would preclude our doing so. However, I believe we must acknowledge that we are effecting a significant modification in an important rule of evidence governing party opponent admissions. Accordingly, I believe the majority should have clearly disavowed *Waechter*'s allegiance to the "old" rule. Instead, by undertaking to distinguish *Waechter*, we may be read as implying that the "well-established foundation requirement" of the authority to speak may still have viability in other circumstances.

Moreover, the majority opinion appears to suggest that Smith's statement of apology to plaintiff could be admitted *against him* to prove his own negligence, which negligence could then be imputed to his employer under the principle of *respondeat superior*. As the trial court noted, Smith was not named as a party to the lawsuit.

The majority has cited no authority for the proposition that, in the absence of another hearsay exception, the statement of a nonparty could be admitted as an admission of a party opponent to prove the nonparty's negligence. The appellate court in *Taylor v. Checker Cab Co.* (1975), 34 Ill. App. 3d 413, appears to hold to the contrary. I submit that the only legitimate theory of admissibility in this case is that Smith's statement qualified as an admission by a party opponent, *i.e.*, *Coastal*, because Smith spoke as Coastal's agent. It is unclear from the majority's *respondeat superior* discussion of this issue whether it may intend that an agent's statement may be

admitted as the employer's party admission only in cases in which, as here, the employer may be vicariously liable for the same agent's negligence. However, the rule undoubtedly has no such limitation. See Handbook, § 802.9, at 684-87.