THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DONNA KOLZOW, Defendant-Appellant.

First District (1st Division)   No. 1—97—3570

Opinion filed November 2, 1998.

2

TULLY, J., specially concurring.

Frederick F. Cohn, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Kenneth T. McCurry, and Julie Line Bailey, Assistant State's Attorneys, of counsel), for the People.

JUSTICE O'MARA FROSSARD delivered the opinion of the court:
Following a bench trial, defendant Donna Kolzow was convicted of involuntary manslaughter for the death of her three-month-old son, who died of heat stroke after she left him unattended in a car for four hours. She was sentenced to three years' probation, with the conditions of counseling and six months in custody in the Cook County Department of Corrections.

On appeal, defendant presents the following issues: (1) whether the evidence was sufficient to support the conviction of involuntary manslaughter beyond a reasonable doubt; (2) whether the court properly admitted the results of an "experiment" as to temperatures inside a car; (3) whether the court improperly relied on matters outside the record in convicting defendant; and (4) whether, in the alternative, the sentence should be vacated as the court considered matters outside the record and whether this sentence was excessive.

We affirm.

FACTS

Defendant related the following in her statements to police: On the night of August 11, 1996, defendant was out with her three-month-old baby, Jeffrey. From 11 p.m. until 2 a.m., she and the child were driving around in a car with a friend of defendant, Eileen Hoover. While driving around, defendant called Officer Jeffrey Simpson, an on-duty Riverside police officer, whom she and Hoover later met at a parking lot around 1 a.m. After feeding the child with a bottle at approximately 2 a.m., she drove Hoover home. In her initial statement to police, defendant said that she and the baby spent the night at Hoover's home until she drove home at 6:30 a.m. However, in a subsequent statement, defendant said that after she dropped Hoover off at home, she ran into Officer Simpson again, who asked her to meet him at the Riverside Swim Club. She met him, got out of the car to talk and drove home around 4:30 a.m. She and the baby arrived home around 5 a.m., but instead of going inside, defendant parked her car in a nearby parking lot and read a book. She stated that she did not go inside because she did not want to wake her sleeping stepmother. At 6:30 a.m., defendant said she noticed her stepmother's car was gone and parked her car in front of the house. She turned off the engine, closed the driver's window, and locked the car. Leaving the baby in the car, defendant then went in the house. She stated she immediately went to the bathroom as she had diarrhea. Defendant said she then set the alarm for 9:30 a.m., lay on the couch and fell asleep. She said she forgot about the baby, who was locked outside in the car.

Defendant stated the alarm never went off and that she awoke at 10:30 a.m. on her own. She said she remembered the baby was still in the car when she noticed he was not in the playpen. She went out to the car and saw the child's face was completely purple. After bringing him into the house, she said she felt his hands and knew he was dead. She then called her father and her workplace. When her sister called the house, defendant told her the baby was dead.

Officer James Glosniak of the Hillside police department arrived

at the scene shortly after 11 a.m. on August 12, 1996, in response to a call from one of defendant's relatives. He testified that, when he arrived, the rear windows of the car were down about four inches and the front windows were closed. He said the car was facing west. The child was inside the house, and the officer found no pulse. The child's body was still warm, and his cheeks and hands were a dark, reddish purple color. Defendant told the officer that she had left the baby in the car from 7 a.m. until 10:30 a.m. that morning with the windows rolled up. However, when later asked whether she had rolled the windows down, she stated she had not touched anything in the car since she removed the baby. Realizing that the child could not be resuscitated, Officer Glosniak called his supervisor to the scene.

An autopsy conducted the next day revealed the baby died of heat stroke, and Dr. Edmond Donoghue of the Cook County medical examiner's office concluded that "parental neglect [was] a significant factor" in the child's death. Donoghue noted that the baby's nutrition, hydration and cleanliness were good and stated on cross-examination that it appeared the child had been well cared for.

After obtaining a search warrant, detectives retrieved an alarm clock from defendant's apartment. Detective Heldt said the clock was displaying the correct time before it was removed from the apartment, and the alarm was set for 6 a.m. On cross-examination, the detective acknowledged he did not test the alarm to see if it functioned properly.

On August 15, 1996, Hillside police detectives conducted an experiment in an attempt to determine the temperature inside a car under circumstances similar to those under which the baby died. Detectives used defendant's car and a newer model of her car which was borrowed from a local dealer and parked the vehicles in a sunny parking lot facing west. In each car they placed an infant seat and a thermometer covered by a paper bag to block any direct sunlight. The thermometers were positioned so that they could be read from outside the car. The rear windows in defendant's car were left down four inches and the windows in the dealership's car were all closed. The parties stipulated as to the hourly temperatures on the mornings of August 12 and August 15; temperatures were slightly higher on August 12, the day the baby died, than on August 15, the day the experiment was conducted. At trial, the court allowed State witness Detective Wollenberg to testify as to the results of the experiment and the hourly temperatures inside each of the cars.

George Gourley, who lived across the street from one of defendant's friends, was also called as a State witness. He testified that a few days prior to baby Jeffrey's death, he was sitting on his front porch when he saw defendant park her car on the street and go inside the friend's

house. He testified that it was a very hot evening, and the windows of the car were rolled up. About 20 minutes later, defendant came out of the house and retrieved the baby, who had been in the car. Gourley further testified that "at least half a dozen times" he witnessed defendant leave the child unattended in a parked car while she went inside her friend's house.

Defendant called no witnesses and presented no evidence.

ANALYSIS

I

Defendant first challenges the sufficiency of the evidence supporting her conviction. Specifically, she asserts that the evidence fails to prove she acted recklessly by leaving her three-month-old son unattended in a car for four hours, resulting in his death.

■ The standard of review on a challenge to the sufficiency of evidence in a criminal case is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Thomas*, 178 Ill. 2d 215, 687 N.E.2d 892 (1997). A court should apply this standard regardless of whether the evidence is direct or circumstantial and should not substitute its judgement for that of the finder of fact on questions involving the weight of the evidence or the credibility of the witnesses. *People v. Sutherland*, 155 Ill. 2d 1, 17, 610 N.E.2d 1 (1992). A criminal conviction will not be set aside on review unless the evidence is so improbable or unsatisfactory that there remains a reasonable doubt of defendant's guilt. *People v. Devine*, 295 Ill. App. 3d 537, 540, 692 N.E.2d 785 (1998).

■ Under the Illinois Criminal Code of 1961, a person commits involuntary manslaughter when he or she "unintentionally kills an individual without lawful justification *** [and] his [or her] acts whether lawful or unlawful which cause the death are such as are likely to cause death or great bodily harm to some individual, and he [or she] performs them recklessly." 720 ILCS 5/9—3 (West 1996). Recklessness is defined as follows:

"A person is reckless or acts recklessly, when he consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, *** and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." 720 ILCS 5/4—6 (West 1996).

Defendant asserts that, in the present case, there was no evidence she knew the car would become so overheated that it was a danger to her baby and thus there was no evidence she consciously disregarded any

risk. Therefore, she argues, there was insufficient proof of recklessness. We disagree and find the record contains sufficient evidence to support a conviction for involuntary manslaughter; specifically, that defendant left her three-month-old son in the vehicle, consciously disregarding a substantial and unjustifiable risk of death or great bodily harm to her son.

■ We find that a rational trier of fact could certainly interpret the evidence presented, including the statement of defendant herself, as supporting the conclusion that defendant acted recklessly in leaving her baby unattended in the car. The evidence in the record supports the State's theory, and the trial court's conclusion, that defendant left the child unattended in an effort to get some uninterrupted sleep. First, defendant claimed to have set her alarm before she lay down to go to sleep, supporting the inference she purposely intended to nap rather than just fall asleep. In addition, she waited outside her stepmother's home from 5 a.m. to 6:30 a.m. even though she had been up all night, thereby avoiding any possibility that her decision to leave the child unattended would be questioned by the stepmother. Also, before defendant went into the house, leaving the baby in the car, she locked the car and closed the windows, further supporting the conclusion that she did not plan to come immediately back out to retrieve the child after going to the bathroom. Finally, the car was found with each back window opened about four inches, which indicates defendant was planning to leave the child in the car and knew it could become hot.

The trial court simply did not find defendant's claim that she "forgot" the child to be credible. A trial court's determination as to the witnesses' credibility and the weight given to their testimony is entitled to great deference. *People v. Patrick*, 298 Ill. App. 3d 16, 697 N.E.2d 1167 (1998).

Defendant also asserts that, because she was a new mother, she was unaware of the danger of leaving the child unattended in the car, and she argues there was no indication she knew how high the temperature in the car could get. However, defendant was not charged with murder for intentionally killing her child; she was charged with involuntary manslaughter, which requires a mental state of recklessness. See 720 ILCS 5/9—3 (West 1996). In general, a defendant acts recklessly when he or she is aware that his conduct might result in death or great bodily harm, although that result is not substantially certain to occur. *People v. DiVincenzo*, 183 Ill. 2d 239 (1998). We believe a reasonable person would be aware of the risks in leaving a three-month-old infant unattended in a parked car for four hours on a summer day, and find the evidence supports the trial court's finding that

defendant acted recklessly by consciously disregarding that clear and obvious risk.

■ We also reject defendant's contention that the trial court utilized a "heightened" standard of care and relied on matters outside the record in convicting defendant. Defendant bases her assertions on various comments made by the trial court prior to convicting defendant. We find these claims are unsupported by the record. In order for comments by a trial judge to constitute reversible error, the defendant must show that the remarks were a material factor in the conviction or that prejudice appears to have been the probable result. *People v. Westpfahl*, 295 Ill. App. 3d 327, 692 N.E.2d 831 (1998). Defendant has presented no evidence that the judge's decision was based on or affected by his references to the mother-child relationship or that any comments he made in this regard served to hold defendant to a higher standard of care. Here, a review of the comments at issue indicates they were extraneous to the judge's determination of guilt, not the basis for the determination. These comments were made after the trial court had heard all of the evidence against defendant, and there is no indication in the record that the judge's personal observations about mother-child relationships influenced his decision.

■ Defendant also contends that the results of the "experiment" were inadmissible and incompetent and that the trial court erred in admitting this evidence. However, defendant did not object to the extensive testimony regarding the experiment and, in fact, cross-examined the witness regarding the testing conditions. Defense counsel only objected to the admission into evidence of a chart which recorded temperatures at various times on August 12, 13 and 15 of 1997, but stated at trial that he had no objection to the chart being used as a "demonstrative tool."

The record indicates that defense counsel has waived any objection to this evidence as he failed to object to the admission of the testimony at trial and failed to raise any objection in the posttrial motion. *People v. Enoch*, 122 Ill. 2d 176, 522 N.E.2d 1124 (1988). Even if this issue had not been waived, the experimental evidence was properly admitted by the trial court.

The admissibility of an experiment depends on whether the conditions of the experiment are substantially similar to the actual circumstances of the case, although the conditions need not be identical. *Halleck v. Coastal Building Maintenance Co.*, 269 Ill. App. 3d 887, 896, 647 N.E.2d 618 (1995). The admissibility of experimental evidence is within the sound discretion of the trial court, whose decision will not be reversed absent a clear abuse of discretion. *Halleck*, 269 Ill. App. 3d at 896. We find no such abuse of discretion in the present case and defer to the trial court's decision in this regard.

## II

■ Finally, defendant contends the trial court considered matters outside the record in sentencing and that the sentence was excessive. A trial court's sentencing decision is entitled to great deference. *People v. Lindsay*, 263 Ill. App. 3d 523, 635 N.E.2d 551 (1994). Because a trial court can best weigh the factors relevant to sentencing, a reviewing court will not disturb a sentence absent a showing of abuse of discretion. *People v. Wright*, 272 Ill. App. 3d 1033, 1045, 651 N.E.2d 758 (1995).

We first address defendant's claim that the judge relied on factors outside the record in sentencing. It is assumed that a judge considers only competent evidence in making a finding. *People v. Tye*, 141 Ill. 2d 1, 25, 565 N.E.2d 931 (1990). This assumption will be overcome only if the record affirmatively demonstrates the contrary. *Tye*, 141 Ill. 2d at 25.

In the present case, a review of the record indicates the judge relied on proper aggravating and mitigating factors in making his sentencing decision. Relevant factors in determining an appropriate sentence include the nature of the crime, protection of the public, deterrence and punishment as well as the defendant's rehabilitative prospects and youth. See *People v. Whitehead*, 171 Ill. App. 3d 900, 908, 525 N.E.2d 1084 (1988). Additionally, a trial court may consider such factors as the defendant's credibility, demeanor and character. *People v. Streit*, 142 Ill. 2d 13, 18, 566 N.E.2d 1351 (1991). The weight attributed to each factor in aggravation and mitigation in imposing a sentence depends on the particular circumstances in each case. *People v. D'Arezzo*, 229 Ill. App. 3d 428, 593 N.E.2d 1076 (1992).

It is important to note that a trial court need not articulate the process by which it determines the appropriateness of a given sentence. *Wright*, 272 Ill. App. 3d at 1045. However, in the case at bar, the record shows the judge addressed factors in aggravation and mitigation in detail. He specifically mentioned that the sentence in this particular case served both as punishment and an "attempt at rehabilitation." His consideration of the nature of the crime is likewise evident in the record, as are his references to defendant's character. The record shows the judge inquired as to aggravating factors, and it also contains an examination of factors in mitigation, including defendant's remorse. The judge also explicitly stated he would consider a letter written by defendant's mother requesting leniency, and defendant's father made an oral statement to the court. Further, the judge took into account the information contained in the presentence investigation report and permitted an amendment clarifying defendant's enrollment in college. We find the record reflects that the judge balanced the factors in ag-

gravation and mitigation, wrestled with the tragic facts of this case and crafted an appropriate sentence to punish as well as rehabilitate.

The fact that a sentencing judge added some personal observations, while not to be encouraged, does not amount to an abuse of discretion. See *People v. Steppan*, 105 Ill. 2d 310, 473 N.E.2d 1300 (1985). Any additional comments or observations made by the trial judge are of no consequence where the record shows the court otherwise considered proper sentencing factors. *People v. Bosley*, 197 Ill. App. 3d 215, 222, 553 N.E.2d 1187 (1990). Here, we find that the proper factors in aggravation and mitigation were appropriately considered, and thus any additional comments were inconsequential.

Finally, we must defer to the trial court's determination of the appropriate sentence, which was well within statutory guidelines. For a reviewing court to modify a sentence within the statutory limits, it must appear to the court that the sentence imposed is a clear departure from the spirit and purpose of the fundamental law and the constitutional requirement that the sentence be proportionate to the nature of the offense. *People v. Beck*, 295 Ill. App. 1050, 693 N.E.2d 897 (1998). We do not find that the sentence imposed in this case is at odds with the purpose and spirit of the law or disproportionate to the crime at issue here.

Accordingly, we conclude the trial court considered the appropriate factors in sentencing defendant and that the sentence imposed was an appropriate exercise of discretion.

CONCLUSION

In the present case, the evidence was sufficient to support a conviction for involuntary manslaughter, and the trial court relied on proper factors when convicting and sentencing defendant. Accordingly, we affirm defendant's conviction and sentence.

Affirmed.

O'BRIEN, P.J., concurs.

JUSTICE TULLY, specially concurring:

I specially concur because while I agree with the result of the majority opinion, I would have emphasized the severity of the crime in this case.

I would like to comment on defendant's complaint that the sentence was excessive. The range of a sentence for an involuntary manslaughter conviction is two to five years. In this case, the sentence was three years' probation, with the conditions of counseling and six

months in custody. I believe the trial judge imposed a more than fair sentence considering that a three-month-old child died of heat stroke, and Dr. Donoghue concluded that "parental neglect [was] a significant factor" in the child's death.

Jeffrey's life was every bit as precious as any other human being's. However, defendant's actions showed that her social life and sleep took precedence over Jeffrey's well-being. Defendant kept Jeffrey in the car all night while she was out socializing, had a habit of leaving Jeffrey in the car alone, and, in a final act of selfishness, left Jeffrey in a severely hot car so she could get uninterrupted sleep. As a result, Jeffrey was left alone to cry in a car with temperatures exceeding 115 degrees. Unfortunately, Jeffrey's cries for his mother were to no avail. The exposure of Jeffrey's three-month-old body to the extreme heat caused sunburn, hemorrhages throughout his heart, and blood to fill his lungs. The cost of defendant's feeble attempt at motherhood is the untimely loss of an innocent young life. Defendant's mild sentence is in no way disproportionate to the heinous crime at issue here.

Therefore, I specially concur.