*In re* M.F., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. Margaret Furlow, Respondent-Appellant).

Fifth District    No. 5—98—0223

Opinion filed April 23, 1999.

Curtis L. Blood, of Collinsville, for appellant.

William Haine, State's Attorney, of Edwardsville (Norbert J. Goetten, Stephen E. Norris, and Kendra S. Mitchell, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE WELCH delivered the opinion of the court:

On January 22, 1998, the circuit court of Madison County entered a judgment terminating the parental rights of Margaret Furlow with respect to her son, M.F. Margaret appeals. We reverse.

Margaret raises the following issues on appeal: (1) whether the allegations in the State's petition to terminate parental rights were proved where the State's witnesses did not testify from personal knowledge but relied on hearsay and case summaries, (2) whether the State failed to prove the allegations of unfitness against Margaret, and (3) whether the case must be remanded for a best-interests-of-the-child hearing because none was held after the finding of parental unfitness.

Margaret was born in 1971. Her son, M.F., was born on August 25, 1988. At time of the termination hearing, M.F. was not living with Margaret. The whereabouts of M.F.'s father are unknown, and there is some evidence that he is deceased.

Margaret has a history of criminal offenses and was arrested five times between October 1994 and March 17, 1995, for various offenses, including shoplifting, intent to sell cocaine, and traffic violations. In the four years prior to March 17, 1995, Margaret had nine indicated reports of abuse or neglect.

On February 6, 1995, the State brought a petition to adjudicate her son neglected, alleging that Margaret (1) chronically left the child with inappropriate caretakers without making appropriate arrangements for his care, (2) had a substance-abuse problem that greatly impaired her ability to provide adequate care and supervision, (3) took the child with her when she and her paramour bought crack cocaine, (4) smoked crack cocaine with her paramour in the child's presence, and (5) refused to cooperate with the Illinois Department of Children and Family Services (DCFS). At a hearing on March 6, 1995, by agreement the court adjudicated the child neglected.

On September 15, 1997, the State brought a petition to terminate Furlow's parental rights and for the appointment of a guardian with the power to consent to an adoption. The petition stated that Margaret Furlow was an unfit person because (a) she failed to demonstrate a reasonable degree of responsibility as to the welfare of the child, (b) she failed to make reasonable efforts to correct the conditions that led to the removal of the child or to make reasonable progress toward the return of the child within 12 months after an adjudication of neglected

minor under the Juvenile Court Act of 1987 (705 ILCS 405/1—1 *et seq.* (West 1996)), and (c) she demonstrated her intent to forego her parental rights, the child being a ward of the court, as manifested by her failure for a period of 12 months to plan for the future of the child, although physically able to do so.

Margaret answered the petition by neither denying nor admitting the allegations but demanding strict proof.

On January 22, 1998, the circuit court entered an order finding that Margaret was unfit for each of the reasons alleged in the petition. The court also found that Margaret was not a credible witness and that Margaret admitted to evidence of a positive urine drop in September of 1997, indicating cocaine use. While the court noted that Margaret claimed that the test was in error, the court characterized Margaret's testimony as a series of weak excuses, rather than valid explanations for her failure to comply with services. The court concluded that it was in the best interests of the minor and the public that the minor remain a ward of the court and that any and all of Margaret's parental rights be terminated.

Margaret's first argument on appeal is that the circuit court relied on inadmissible hearsay testimony in terminating her parental rights. She contends that the only witnesses who presented evidence of her unfitness were Theresa Murphy, a caseworker for Margaret and M.F., and Mary Phillips, a therapist who worked with Margaret and M.F. These two witnesses, Margaret states, offered evidence that was mostly a description of what DCFS workers had said and written. Because Margaret's arguments with respect to hearsay have no independent significance, we will consider the impact of the alleged hearsay statements in the context of the next issue Margaret raises: whether the State met its burden in proving Margaret's unfitness.

■ According to section 1 of the Adoption Act, an " 'Unfit person' means any person whom the court shall find to be unfit to have a child, without regard to the likelihood that the child will be placed for adoption." 750 ILCS 50/1(D) (West Supp. 1997). Because the termination of parental rights is an extraordinarily serious matter, the State must prove unfitness by clear and convincing evidence. *In re A.J.*, 296 Ill. App. 3d 903, 912 (1998). A trial court's finding of unfitness will not be reversed on appeal unless it is against the manifest weight of the evidence. *In re A.J.*, 296 Ill. App. 3d at 912.

■ A finding of unfitness may be based on evidence sufficient to support any one statutory ground, even if the evidence is not sufficient to support the other grounds alleged. *In re D.L.W.*, 226 Ill. App. 3d 805, 809 (1992). Whether a parent's efforts to correct the conditions that were the basis of the removal are reasonable involves a

subjective judgment of the particular parent's efforts; however, the reasonableness of the progress toward the child's return is measured objectively by the amount of movement toward the goal of reunification. *In re V.O.*, 284 Ill. App. 3d 686, 690 (1996).

As stated above, the circuit court found unfitness based on the following statutory grounds: that Margaret failed to demonstrate a reasonable degree of responsibility as to the welfare of the child; that she failed to make reasonable efforts to correct the conditions that led to the removal of the child or failed to make reasonable progress toward the return of the child to her within 12 months after an adjudication of neglected minor under the Juvenile Court Act of 1987; and that she demonstrated her intent to forego parental rights, the child being a ward of the court, as manifested by her failure for a period of 12 months to plan for the future of the child, although physically able to do so.

At the heart of each of the circuit court's grounds for termination is its finding that Margaret failed to comply with the service plan. The circuit court states, in essence, that Margaret did not comply with her service plan and that it did not believe her excuses for failing to do so. Margaret argues that she did comply with the service plan, that there was no competent evidence to support the circuit court's findings, and that the trial court's decision to terminate parental rights was against the manifest weight of the evidence. We will now examine the evidence in the context of Margaret's service plan to determine if there was clear and convincing evidence to support termination.

Under Margaret's service plan, she was required to have a psychiatric evaluation, make progress in counseling, complete counseling, have drug/alcohol treatment, take parenting classes, and maintain stable housing. We will address each of these objectives in turn.

It is undisputed that Margaret had a psychiatric evaluation. Her caseworker, Murphy, testified that she had an evaluation with Dr. Thompkins.

The second requirement of the service plan was that Margaret make progress in counseling. There is evidence in the record that Margaret did, in fact, show progress in counseling. A letter dated March 27, 1997, from counselor Linda Murray, who did not testify at trial, states:

> "Since entering treatment on October 9, 1996, Margaret has been consistent with making[ ] [and] keeping appointments[ ] [and] following through in addressing issues, treatment goals and recommendations. *** [Margaret's] depressed mood has shown significant improvement and accompanying features have continued to decrease. *** It is my professional opinion that Margaret's depres-

sion was exacerbated by the stress of the ensuing separation from [M.F.]."

The record also demonstrates that Margaret suspended counseling because she was ordered to concentrate on drug and alcohol treatment following the positive urine drop. There is no clear and convincing evidence that Margaret was not making progress in counseling.

The next requirement of the service plan was that Margaret complete counseling. As stated above, Margaret could not complete counseling because she was told to discontinue counseling to work on her perceived drug and alcohol abuse problem. Margaret's doing what she was told to do—suspend counseling—is not clear and convincing evidence that she failed to comply with her service plan.

The next requirement of the service plan was that Margaret have drug and alcohol treatment. Murphy testified that Margaret was receiving drug and alcohol treatment at the time of the termination hearing. Since the positive drug test, Margaret's five most recent drug tests were negative. While she has not completed drug and alcohol counseling, the State did not present clear and convincing evidence that Margaret was not complying with her service plan's requirement to have drug and alcohol treatment.

Margaret was also required to attend parenting classes under the service plan. The record yields contradictory evidence on this issue. A report covering the period from July 25, 1995, to January 5, 1996, states that Margaret has not completed parenting classes. However, another report indicates that Margaret did complete a parenting program in February 1996. The State failed to present clear and convincing evidence that Margaret failed to complete parenting classes.

The next requirement of Margaret's service plan was for her to obtain appropriate housing. The bulk of the State's position on appeal centers around this issue.

The initial finding of neglect and the removal of M.F. were based on a petition which alleged that Margaret had a substance-abuse problem that impaired her ability to care for and supervise M.F. and that respondent and her paramour (Randy Allen) purchased and used crack cocaine in M.F.'s presence.

At the time of the termination hearing, Margaret was residing with Allen. Allen admitted that he was addicted to crack cocaine at the time M.F. was removed from respondent's care.

The question before us is whether residing with Allen constitutes inappropriate housing and therefore parental unfitness. Caseworker Murphy testified that any residence which included Allen could not be a suitable residence because Allen was an alcohol abuser and a child abuser. Her position was based upon the fact that Allen was indicated

for physical abuse by DCFS and was therefore a threat to M.F. Upon examining the record, we conclude that there is no competent proof that Allen used drugs or alcohol or abused his children within three years of the termination hearing.

The only evidence that Allen was unfit to be a parent was hearsay information. Largely, it was information that Murphy had "heard" from DCFS. She had no firsthand knowledge of Allen's alleged unfitness. Unless hearsay falls within a recognized exception, it is inadmissible. *In re A.J.*, 296 Ill. App. 3d 903, 916 (1998). A trial court's determination that a particular statement is hearsay is subject to a *de novo* standard of review. *Halleck v. Coastal Building Maintenance Co.*, 269 Ill. App. 3d 887, 891 (1995). The rules of evidence, as modified by the Juvenile Court Act of 1987, apply in proceedings for the termination of parental rights. *In re M.S.*, 210 Ill. App. 3d 1085, 1095 (1991). Murphy testified that Allen has a history of involvement with DCFS and that he would have to have services so that the living environment would be safe for M.F.

Murphy also alleged that Allen had a history of abuse to kids, but Murphy did not give dates or specific instances and had no personal knowledge of anything Allen had done wrong. Murphy said Allen was a problem, based on information given to her organization by DCFS. While Allen has convictions for armed robbery, drugs, and writing bad checks, there is no recent history of criminality.

At trial, Allen testified that his ex-wife Lisa was found guilty of the child abuse but that there was no finding against him. After Lisa was found guilty of physically attacking their son, the court ordered Lisa from the home and Randy retained custody of his son and Lisa's children. The State did not impeach Allen's testimony that his ex-wife Lisa was the one guilty of the child abuse. There is no evidence that Randy has been engaged in illegal or dangerous activities in the recent past. Allen's history with DCFS resulted in Margaret receiving an indicated report when authorities found her living with Allen.

The competent evidence presented in this case is reminiscent of that in *In re A.J.*, 296 Ill. App. 3d 903 (1998). In that case, the court found that the State utterly failed to establish, at least by competent evidence, that respondent had a drug problem that hindered his ability to raise his child or that he was having a destructive relationship with the child's mother that required him to undergo counseling. *A.J.*, 296 Ill. App. 3d at 916. The only reason for terminating respondent's parental rights was his failure to comply with administrative directives that had nothing to do with his ability as a parent. *A.J.*, 296 Ill. App. 3d at 916. In the instant case, the State seeks to terminate Margaret's parental rights because she violated her service plan

through her relationship with Allen. The problem with this position is that there is no showing that Allen abused drugs or alcohol, broke any laws, or abused M.F. or other children during the relevant period.

Accordingly, we believe that the State has failed to present clear and convincing evidence to support any of the three alleged grounds of Margaret's unfitness. Therefore, we reverse the judgment of the circuit court terminating Margaret's parental rights.

Reversed.

GOLDENHERSH and MAAG, JJ., concur.