**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (3d) 190562-U

Order filed March 16, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Peoria County, Illinois. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-19-0562 Circuit No. 17-CF-822 |
| | ) | |
| CARLOS D. WILLIAMS, | ) ) | Honorable Paul P. Gilfillan, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE SCHMIDT delivered the judgment of the court.
Justices Holdridge and Lytton concurring in the judgment.

**ORDER**

¶ 1     *Held*:  (1) The court did not impose an excessive sentence. (2) Defense counsel complied with Rule 604(d).

¶ 2     Defendant, Carlos D. Williams, appeals his conviction for aggravated battery. Defendant argues that his sentence is excessive and defense counsel failed to strictly comply with Illinois Supreme Court Rule 604(d) (eff. July 1, 2017). We affirm.

¶ 3                                    I. BACKGROUND

¶ 4    The State charged defendant, by indictment, with home invasion (720 ILCS 5/19-6(a)(5) (West 2016)), aggravated battery (*id.* § 12-3.05(e)(1)), unlawful possession of a weapon by a felon (*id.* § 24-1.1(a)), and aggravated domestic battery (*id.* § 12-3.3(a)). At the time of the offenses, defendant was 21 years old.

¶ 5    Defendant entered an open guilty plea to aggravated battery, a Class X felony (*id.* § 12-3.05(h)), and the State dismissed the remaining charges. The factual basis indicated that on October 6, 2017, Kerston Burks resided with her children. Defendant and Burks were previously in a relationship and shared custody of the children, but defendant did not live at the same residence. Earlier that day, defendant watched the children at Burks's residence. He left the apartment and returned at approximately 9 p.m. At that time, Burks informed defendant that she had company and did not permit defendant to enter. Burks left the door and entered her bedroom with Chris Hardy. A short time later, Burks heard the door to the apartment open, and defendant entered her bedroom. Burks later learned that another resident had allowed defendant to enter. Defendant became irate and started yelling when he entered the bedroom. Defendant had a handgun. Hardy and defendant engaged in a physical altercation. Defendant attempted to choke Burks, and she fell. Burks heard a gunshot and saw that defendant had shot her. Burks fled the residence and went to a neighbor's apartment. Medical records showed charring around the gunshot wound on Burks's leg, consistent with being shot at close range.

¶ 6    Following the plea, defendant filed a motion to withdraw his guilty plea as a self-represented litigant while still represented by counsel. Defendant alleged that (1) the State misrepresented the reason for dismissing the home invasion offense, (2) he believed counsel would request a Rule 402 conference instead of a blind plea, and (3) he did not view all the evidence

2

against him prior to his plea. Defendant contended each of these reasons led to him entering an unintelligent and unknowing plea.

¶ 7                Defendant's presentence investigation report (PSI) showed that following defendant's arrest, he participated in multiple incidents in the Peoria County jail, resulting in disciplinary action. The incidents included one physical altercation resulting in injuries, and five incidents of possession of cannabis. The PSI also revealed that defendant had several ordinance violations and a felony conviction for robbery from 2013, in which defendant received four years' imprisonment. Defendant did not complete high school, enroll in the military, or hold a job at any time. Peoria high school expelled defendant for numerous behavioral issues, including making threats, swearing, talking about gangs, fighting, possession of drug paraphernalia, attending school intoxicated, and inappropriate sexual conduct. Defendant began regularly consuming cannabis at age 11 and alcohol at age 14. Defendant stated that he smoked four "blunts" on the date of the present offense. Defendant relied on Link benefits and family assistance as his only source of income. As a child, the Department of Children and Family Services (DCFS) removed defendant from his mother's custody after finding a substantial amount of cash and a gun case in the house and that defendant was left in the home without appropriate supervision or food. The court terminated the parental rights of defendant's parents. Defendant's grandmother adopted defendant, and defendant lived with her for the remainder of his childhood. Defendant maintained a good relationship with his mother. Defendant's father had been in prison since 2015. Defendant had never been married but fathered two children with Burks. Defendant stated that he spent most of his free time with his children, he had a good relationship with his children, and described himself as a "great dad." DCFS implicated defendant in neglect proceedings, based on the present offense and a second offense. On May 20, 2016, defendant slapped, choked, and caused injury to Burks in

3

front of one of their children. Defendant threatened to kill Burks. DCFS previously indicated defendant for a different allegation of "Substantial Risk of Physical Injury/Injurious Environment." At the time of the PSI, the court named Burks as the children's guardian and found defendant unfit due to these incidents of physical abuse, his prior criminal history, and his present incarceration. Regarding this offense, defendant stated that "[a]ll of it was misunderstanding, I didn't come to harm no one. I just came to get my kids and things went sideways." Defendant said that both he and Burks were responsible for what happened.

¶ 8        Prior to the start of the sentencing hearing, counsel indicated that defendant had not alleged any claims of ineffective assistance of counsel regarding his motion to withdraw guilty plea. The court confirmed with defendant that he was satisfied with counsel's representation.

¶ 9        The State began its sentencing argument by clarifying that it dismissed defendant's home invasion charge due to learning that another resident allowed defendant to enter. The State argued that defendant entered Burks's residence while their children were present and used a firearm to shoot Burks. The State noted defendant's prior felony conviction and argued that defendant had a chance to turn his life around. Instead, defendant committed the present offense, and DCFS alleged that defendant committed further abuse to Burks in front of their children. The State asked the court to sentence defendant to 20 years' imprisonment.

¶ 10        Defense counsel indicated that defendant did not serve his full prison sentence for his prior robbery conviction due to his successful completion of boot camp. Counsel called defendant's mother, Michelle Riley, to testify. Riley said her parental rights were terminated when she was 16 years old. She confirmed the reasons for his removal, including her drug use and defendant's father going to federal prison. Riley noted that defendant wanted to better himself, further his education, and obtain employment. Counsel asked the court to consider defendant's troubled family history

4

and how it impacted defendant's behavior and choices leading up to the present offense. Counsel asserted that defendant committed the offense in the heat of passion, where he observed Burks engaging in intimate contact with another man. Counsel asked for a sentence closer to the minimum of six years' imprisonment.

¶ 11     Defendant submitted a statement in allocution, apologizing to Burks and Hardy. Defendant stated that he was willing to correct his mistake and better himself and asked the court for a second chance.

¶ 12     In its ruling, the court considered the factors in aggravation and mitigation, the PSI, the parties' arguments, and the history and character of defendant. The court continued, "having due regard for the nature and circumstances of the offense, a few findings are in order for the record, and in no particular order. And the fact that one item or factor hasn't specifically been mentioned in court today does not mean that it hasn't been considered." The court found no grounds to excuse defendant's behavior. The court stated,

> "Focusing on [defendant's] criminal history, not horrible. Seen much worse. One prior felony, a Class 2, which involved Boot Camp, which sometimes happens on felonies for first or lower level offenders. But now you're a felon, and now you go around carrying a gun, which you shouldn't have, and ended up shooting someone. So while we are a forgiving society, eager to provide second chances to people in life, you just don't fall in that category today.
>
> I believe your chance or prospects for rehabilitation, as we speak here today, are pretty low. But again, probation isn't going to happen. You're going to go to prison. The only question is: When you come out of

prison, will you be able to backup the words that you talked about in writing and orally here today? ***

* * *

*** I get that it's hard to get a job when you have a felony record, but some people do it. Some people scrimp, save, scrape, claw to do what they have to to support their relatives. The only reason I'm mentioning that is that their [*sic*] doesn't appear on record a clear case of harm to your [dependents] because you're going away to prison. In other words, you're not losing a big job. *** [T]hey're not going to be able to live in the house that you paid a mortgage for or somehow they're—they're not going to be able to go to schooling that you provided for. None of that has happened to date. ***

That disciplinary record of yours continues while you're in the jail. You are the exception to the rule here when it comes to people being written up at the jail for incidents. One physical altercation. I'm not saying you started it or not. I'm saying you were involved in it. And then, somehow, someway, multiple infractions of having cannabis in the jail. That's scary, but yet you continue to do it 1-2-3-4-5 times. That goes beyond mistake, and that requires coming thought aforesaid to accomplish something like that in that setting.

You'll be given a chance to effectuate this change that you profess here today, when you can be trusted on the outside. And from a legal

6

prospective [*sic*], you'll be trusted to be on the outside once you serve your sentence in the case. ***

As I mentioned, no hardship to your young [dependents.] *** I would argue that the mother of your children might struggle if you didn't go to prison. You were out and this is what happened because you—I don't know if it was jealousy, passion, rage, whatever, but the offense was committed when you were out. It wasn't as though you were the protector of the mother of the children at that time.

* * *

I've said a lot of things negative about you today. I must recognize also the hardship that you've encountered in growing up. Can't imagine, firsthand, what you've gone through. To your mother's credit, she's here in court for you today, although she had a rough time and ended up having to have her rights terminated, I believe.

* * *

*** [A]ll we can do is work on the future. His future includes a stint in prison to begin with, and then hopefully things get back on track after that.

Guns are a problem in our society. *** Guns put far more people in prison than they've ever been used for the legitimate self-defense of one's person, property, or that of others. And you're just the latest in a long line of people who, for some reason, feel the need to carry a gun, even though it's illegal. I hear time and again: 'It's for my safety or someone else's

7

safety.' There you have it. I accept that answer, but by doing so and when a—a crime is committed with regard to that gun, then you have to accept the consequences, and I know you will."

The court sentenced defendant to 18 years' imprisonment, which it deemed necessary to deter others.

¶ 13 Counsel adopted defendant's motion to withdraw guilty plea and filed a subsequent "Motion to Withdraw Plea of Guilty." In addition to defendant's claims, counsel alleged that he decided not to proceed with a Rule 402 conference, and instead enter an open plea. Further, counsel asserted that the evidence defendant alleged he had not reviewed were squad car videos at or about the time of his arrest.

¶ 14 Counsel also filed a motion to reconsider sentence. In the motion, counsel argued that the court failed to fully consider the mitigating evidence regarding defendant's character and nature of the offense. The court failed to consider that the bullet hit Burks while defendant struggled with Hardy, defendant was provoked into committing the offense, and defendant acted under duress. The court also failed to consider defendant's limited criminal history, his difficult childhood and background, and the termination of his parent's parental rights. Given defendant's excessive sentence, counsel asked for a lower sentence.

¶ 15 Counsel filed with his motions a Rule 604(d) certificate that stated:

"I, *** attorney for defendant, certify pursuant to Supreme Court Rule 604(d) that:

1) I have consulted with Defendant in person to ascertain the Defendant's contentions of error in the plea of guilty + sentencing;

8

2) I have examined the trial court file and report of plea & sentencing pleadings and;

3) I have made the motions necessary to preserve & contest the errors in the proceedings."

¶ 16 During a hearing on the motions, counsel asked defendant about his understanding of the terms under which the State dismissed his home invasion offense and his Rule 402 conference allegation. Counsel also asked defendant "[i]s there any other basis—I've gone through your motion. Is there any other basis you would like to present to the Court as to why you would like to be able to withdraw your guilty plea?" Defendant responded "No." The court denied defendant's motion to withdraw his guilty plea and motion to reconsider sentence. Defendant appeals.

¶ 17                                   II. ANALYSIS

¶ 18                                A. Excessive Sentence

¶ 19 Defendant first argues that his sentence is excessive because the circuit court failed to consider his struggle with drug and alcohol addiction, and status as an emerging adult, including characteristics of his youth, lack of significant criminal history, potential for rehabilitation, and expression of remorse and desire to rehabilitate.

¶ 20 The Illinois Constitution requires that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. The circuit court has wide latitude in sentencing a defendant to any term prescribed by statute, "[a]s long as the court does not consider incompetent evidence, improper aggravating factors, or ignore pertinent mitigating factors." *People v. Hernandez*, 204 Ill. App. 3d 732, 740 (1990). Relevant sentencing considerations include the nature of the crime, the public's protection, deterrence, punishment, and the defendant's

rehabilitative potential. *People v. Kolzow*, 301 Ill. App. 3d 1, 8 (1998). The weight that the court should attribute to any factors in aggravation and mitigation depends on the particular circumstances of the case. *Id.* The court is not required to cite each factor it considered in fashioning a defendant's sentence. *People v. Perkins*, 408 Ill. App. 3d 752, 763 (2011).

¶ 21   We review the circuit court's sentencing determination for an abuse of discretion. *People v. Stacey*, 193 Ill. 2d 203, 209 (2000). We will find an abuse of discretion only where the court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the court. *People v. Hall*, 195 Ill. 2d 1, 20 (2000). We will not disturb a sentence within the applicable sentencing range unless the trial court abused its discretion. *Stacey*, 193 Ill. 2d at 209-10.

¶ 22   At the outset, we note that the statutory sentencing range for a Class X felony aggravated battery is 6 to 30 years' imprisonment. See 720 ILCS 5/12-3.05(h) (West 2016); 730 ILCS 5/5-4.5-25(a) (West 2016). Defendant's 18-year prison sentence is well within the statutory range. Therefore, the sentence is presumptively valid, and defendant bears the burden to rebut this presumption. *People v. Sauseda*, 2016 IL App (1st) 140134, ¶ 12.

¶ 23   During the sentencing hearing, the court expressly said that it considered the factors in aggravation and mitigation as well as the information in the PSI. Defendant cites to nothing in the record that shows the court dismissed defendant's age, issues with addiction, troubled upbringing, minimal criminal history, rehabilitative potential, and defendant's expression of remorse and desire for rehabilitation. Instead, the record shows that the court expressly considered defendant's upbringing, rehabilitative potential, and lack of criminal history. Ultimately, the court determined that defendant's mitigating evidence did not significantly depreciate the seriousness of the offense

or warrant the imposition of a lesser sentence. Instead, the court reasoned that a mid-range term of imprisonment was necessary to rehabilitate defendant and protect the public.

¶ 24		Defendant also argues that the same concerns that underlie the Supreme Court's decisions in *Miller v. Alabama*, 567 U.S. 460, 469 (2012), apply to him because he was a young adult at the time of the present offense. In *Miller*, the Supreme Court found that juvenile psychological and brain development research established that juveniles have diminished culpability for their behavior, and, due to their distinctive juvenile brain chemistry, are immature, reckless, impulsive, or irresponsible. *Id.* at 471-73. As a result, *Miller* held that mandatory life imprisonment without parole for juvenile offenders violated the eighth amendment's prohibition on cruel and unusual punishment. *Id.* at 470. *Miller* required courts to consider the mitigating qualities of youth before imposing life sentences to juveniles. *Id.* at 476.

¶ 25		The *Miller* considerations are not applicable to defendant, as (1) he was not a juvenile at the time of the offense, and (2) the court did not and could not impose a *de facto* life sentence. Specifically, defendant committed the present offense when he was 21 years old, and the court imposed a sentence of 18 years' imprisonment. At most, defendant faced a sentence of 30 years' imprisonment, a term far lower than the 41-plus-years sentence that our supreme court held to be *de facto* life sentences in *People v. Buffer*, 2019 IL 122327, ¶ 40. Therefore, the *Miller* rationale does not apply to defendant. We conclude that the court did not abuse its discretion in sentencing defendant.

¶ 26		B. Rule 604(d)

¶ 27		Defendant next argues that defense counsel did not strictly comply with Rule 604(d) where counsel's certificate did not state that he made the necessary amendments to defendant's motion to withdraw guilty plea.

11

¶ 28    Rule 604(d) provides:

> "The defendant's attorney shall file with the trial court a certificate stating that the attorney has consulted with the defendant either by phone, mail, electronic means or in person to ascertain defendant's contentions of error in the sentence and the entry of the plea of guilty, has examined the trial court file and both the report of proceedings of the plea of guilty and the report of proceedings in the sentencing hearing, and has made any amendments to the motion necessary for adequate presentation of any defects in those proceedings." Ill. S. Ct. R. 604(d) (eff. July 1, 2017).

The supreme court has held that an attorney must strictly comply with Rule 604(d). *In re H.L.*, 2015 IL 118529, ¶ 8. To do so, counsel must prepare a certificate that meets the content requirements of Rule 604(d) and file the certificate with the circuit court prior to the filing of any notice of appeal. *Id.* ¶ 25. "The certificate need not recite word for word the verbiage of the rule." *People v. Wyatt*, 305 Ill. App 3d 291, 297 (1999). The remedy for counsel's failure to strictly comply with Rule 604(d) requirements is to remand for the filing of a new motion to withdraw guilty plea, along with a new hearing on the motion. *People v. Stefanski*, 2019 IL App (3d) 160140, ¶ 22. We review *de novo* counsel's compliance with Rule 604(d). *Id.*

¶ 29    Here, counsel's certificate did not expressly state that counsel "made any amendments to the motion necessary for adequate presentation of any defects in those proceedings." Ill. S. Ct. R. 604(d) (eff. July 1, 2017). Instead, the certificate stated that counsel "made the motions necessary to preserve & contest the errors in the proceedings." While not a verbatim recitation of the rule, counsel's phrasing impliedly established that counsel made the motions necessary to preserve and contest the errors in the proceedings. See *Wyatt*, 305 Ill. App 3d at 297. In other words, counsel

12

consulted with defendant about any contention of error and reviewed the court file and the report of proceedings in order to make any motions necessary for adequate presentation of any defects in those proceedings. Counsel's certificate strictly complied with Rule 604(d).

¶ 30    In reaching this conclusion, we reject defendant's reliance on *People v. Dismuke*, 355 Ill. App. 3d 606, 607-10 (2005) and *People v. Willis*, 313 Ill. App 3d 553, 557 (2000). In *Dismuke*, defense counsel completely omitted the fourth requirement under Rule 604(d). *Dismuke*, 355 Ill. App. 3d at 608. Clearly, a certificate that completely omits one of the four elements of the rule cannot be found to strictly comply with Rule 604(d). *Id.*

¶ 31    In *Willis*, 313 Ill. App. 3d at 555, defense counsel filed a Rule 604(d) certificate but crossed out the fourth requirement. The court found that the certificate with a crossed out fourth requirement, in addition to other defects, did not strictly comply with the rule. *Id.* at 557. Striking out one of the requirements was tantamount to omitting this required language completely. Here, in contrast to *Willis*, counsel used language that conveyed a similar meaning as the fourth element of Rule 604(d), he did not completely omit it or strike it out. Counsel's certificate complied with all of the requirements of Rule 604(d).

¶ 32                                III. CONCLUSION

¶ 33    For the foregoing reasons, we affirm the judgment of the circuit court of Peoria County.

¶ 34    Affirmed.