**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (3d) 200516-U

Order filed August 26, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Peoria County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-20-0516 Circuit No. 16-CF-865 |
| GARY WAYNE LOVELL, | ) ) ) | Honorable John P. Vespa, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE HAUPTMAN delivered the judgment of the court.
Presiding Justice O'Brien and Justice Peterson concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:  Where the trial court properly weighed the statutory factors in aggravation and mitigation and considered the evidence presented, the presentence investigative report, and the sexual offender's evaluation in sentencing 77-year-old defendant, the court's sentence of 45 years' imprisonment was not excessive.

¶ 2    Defendant, Gary Wayne Lovell, appeals his conviction for predatory criminal sexual

assault of a child. Defendant argues that his 45-year sentence is excessive. We affirm.

¶ 3       

¶ 4        On December 13, 2016, the State charged defendant, by indictment, with predatory criminal sexual assault of a child (720 ILCS 5/11-1.40(a)(1) (West 2016)), criminal sexual assault (*id.* § 11-1.20(a)(3)), and aggravated criminal sexual assault (*id.* § 11-1.60(c)(1)(i)).

¶ 5        On March 23, 2017, defendant entered an open plea to predatory criminal sexual assault of a child, a Class X felony (*id.* § 11-1.40 (b)(1)), and the State dismissed the remaining charges. The factual basis indicated that defendant sexually assaulted his approximately seven-year-old great-granddaughter, D.S., over the course of one year. D.S. specifically described two instances. The first instance occurred when she sat on top of a laundry machine and defendant reached inside her clothing and touched her vagina with his hand. Defendant held his hand on her vagina, and D.S. felt a poke. D.S. described another instance that occurred in defendant's bedroom when he reached inside her clothing and spread her vagina. This made D.S. "feel sad." In both instances, defendant told her not to tell anyone. D.S. ultimately disclosed the abuse to a teacher following an inappropriate touching presentation in school.

¶ 6        During his eventual interview with police, defendant stated that D.S. started hugging him and "being very loving." Defendant was not sure how it happened, but he placed his hand on D.S.'s vaginal area outside of her clothing. He then stated that he could not believe "a 7-year-old could react the way she did" and she "really got into it." Defendant put his hand down D.S.'s pants and massaged her vaginal area. Defendant reported that he rubbed D.S.'s vaginal area inside or outside of her clothing on six to eight different occasions.

¶ 7        Defendant's presentence investigation report (PSI) indicated that he was 77 years old, had been married to his wife for approximately 55 years, and had six children. Defendant was honorably discharged from the Air Force National Guard. Defendant had no prior convictions

and had held consistent employment as a car salesman. At the time of the offense, defendant was retired.

¶ 8        Defendant wrote in his statement attached to the PSI, that he was ashamed of the allegations but denied the "worst" allegation, which defendant described as removing D.S.'s clothing and "spread[ing] her open" stating, "it never happened." Defendant also contested the number of incidents the State suggested had occurred and asserted that his abuse did not have "any traumatic effect" on D.S. Finally, defendant noted his age and asked the court for leniency.

¶ 9        Defendant's sex offender evaluation indicated that defendant negatively reacted to an "Empathy and Remorse Self-Report Inventory." It was reported that he verbally expressed frustration, automatically circled all "Strongly Disagree" responses, wrote on the questionnaire "I am offended by this questionnaire," and threw his pen down aggressively. Defendant told the evaluator that the questionnaire "implied that he was a sexual abuser," which defendant denied despite pleading guilty to the present offense. The evaluator also referenced investigative reports indicating that according to defendant, D.S. pursued him by hugging and rubbing up against him when his wife was not around. Defendant indicated that eventually, he put his hands down D.S.'s pants, and she "really went wild." Defendant further maintained that D.S. had an advanced sexual knowledge that he believed was due to D.S. viewing her mother and her mother's boyfriend engaging in sexual activity, making D.S. "sexually curious." Defendant believed that D.S. approached him in a sexual manner and was an active participant in the assaults. Defendant acknowledged that he fondled D.S.'s vaginal area on approximately six different occasions. The evaluator noted that defendant "admitted to the police investigator, that he 'didn't know how he acquired the fascination for young girls' while he denied any similar interests in young girls during the current interview and seemed to justify the current offense." Defendant indicated that

3

he would participate in sex offender treatment but did not "feel" that he had "a problem." The evaluator assessed defendant's risk of reoffending as low but recommended ongoing treatment and assessments.

¶ 10        On June 29, 2017, the court held a sentencing hearing. The State, in noting that the statutory sentencing range was 6 to 60 years, requested a sentence in the middle of that range. Defense counsel argued that due to defendant's age, a sentence above the minimum sentence would effectively be a death sentence and asked for the minimum sentence of six years' imprisonment.

¶ 11        Defendant stated in allocution that he had great remorse for his actions and did not intend to blame D.S. Defendant continued to assert that D.S.'s habits and grades had not changed since the abuse occurred. Furthermore, defendant maintained that D.S. "shows absolutely no signs of a psychological effect," and the State had presented no documentation to show that D.S. would "be offended" by the abuse as she got older. Defendant did not believe that he should receive what amounts to a life sentence for inappropriately touching D.S.

¶ 12        In its ruling, the court considered

> "the [PSI]; the evidence presented; the arguments; the statement of allocution; the financial impact of incarceration; the statutory factors in mitigation and aggravation, *** the history and character of the defendant; the defendant's education; his job history; statements on his behalf; the defendant's potential for rehabilitation; and *** the circumstances and nature of the offense."

The court found in mitigation that defendant's conduct did not cause or threaten serious physical harm or intent to cause physical harm. The court also noted defendant's lack of prior criminal history. In aggravation, the court found that a sentence was necessary to deter others. The court

4

also noted the familial relationship between defendant and D.S. and that relationship should be one of protection and not harm. The court referred to a letter wherein defendant denied that D.S. was negatively affected by his actions, contested the State's evidence and the number of instances of abuse, and asserted that given his old age, he should receive a lenient sentence. The court continued,

"I want people to know that young offenders and old offenders do not have a blank check. ***

I don't believe that people who are 77 or older get a—that 'you can only give me a couple years because I'm so old,' ***. ***

*** I disagree that there's a blanket policy for people who are 77 years old, or in that ball park age wise, that means they have to get a small number of years because they're old. 'Judge, do not take each case as it comes. Do not do that. Instead, have a blanket policy that if we're 77 or older or around 77, you've got to give them a small number of years. Have a blanket policy. Do not take cases on their own.'

Well, I refuse to do that. The appellate court has said quite frequently that trial judges should not have blanket policies. So I'm going to take this case on its own. People who think that it's automatic that someone who's 77 should get the minimum, they conflict with my belief on it, and there's only one vote in this courtroom and it's mine.

* * *

I am required to consider rehabilitation. The question was raised by someone other than me, is rehabilitation possible for a 77-year-old? And I don't

know the answer. I'm not going to say—I don't have the answer. I'm not going to say yes or no to that."

The court noted that defendant was not the victim of sexual abuse, nor did he report a drug or alcohol problem. The court highlighted several statements made by defendant during the sex offender evaluation, including minimizing the offense, diminishing his culpability, and blaming the victim and the victim's mother. The court also noted defendant's statement in allocution. The court took the culmination of defendant's behavior and attitude during these interviews and his presence in court as indicating that defendant "thinks he didn't do anything wrong." The court acknowledged that defendant apologized but characterized the apology as "weak." The court found defendant's accountability "sorely lacking" and his potential for being rehabilitated "pretty much zero." The court noted that it did not rely on defendant's age when reaching that determination. The court stated that "[i]t shocks the conscience that a great-grandfather did this to his 8-year-old great-granddaughter many times. Not one time. *** It's horrible that it happened once, but that [defendant] kept doing it." The court sentenced defendant to 45 years' imprisonment.

¶ 13       On July 20, 2017, defendant filed a motion to reconsider sentence. Defendant alleged that the court failed to consider his lack of criminal history, family situation, work history, defendant's age and health, defendant's guilty plea, and expression of remorse. Further, that the court improperly determined that defendant lacked rehabilitative potential. Defendant reasoned that, as a result of the improper considerations, the court imposed an excessive sentence.

¶ 14       On March 7, 2018, following arguments, the court stated that it did "not have a blanket policy regarding sentencing in any form," and looks at the evidence and merits of each case. In this case, the court considered its desire to protect the public and the nature of the great-

6

grandfather relationship with his great-granddaughter. The court also noted that defendant pled guilty to the offense but later denied his actions at his sentencing hearing and stated that D.S. was fine. The court found that defendant could not be rehabilitated and highlighted the number of sexual assault incidences. The court denied defendant's motion. Defendant appeals.

¶ 15                                    II. ANALYSIS

¶ 16        Defendant argues that his sentence is excessive because the circuit court failed to adequately consider his age of 77 years, sufficiently weigh the factors in mitigation, and found defendant lacked rehabilitative potential.

¶ 17        The Illinois Constitution requires that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. The circuit court has wide latitude in sentencing a defendant to any term prescribed by statute, "[a]s long as the court does not consider incompetent evidence, improper aggravating factors, or ignore pertinent mitigating factors." *People v. Hernandez*, 204 Ill. App. 3d 732, 740 (1990). Relevant sentencing considerations include the nature of the crime, the public's protection, deterrence, punishment, and the defendant's rehabilitative potential. *People v. Kolzow*, 301 Ill. App. 3d 1, 8 (1998). The court

> "is not required to detail precisely for the record the exact process by which [it] determined the penalty nor is [it] required to articulate [its] consideration of mitigating factors nor is [the court] required to make an express finding that defendant lacked rehabilitative potential. [Citation.] The seriousness of the crime is the most important factor in determining an appropriate sentence, not the presence of mitigating factors such as the lack of a prior record, and the statute

7

does not mandate that the absence of aggravating factors requires the minimum sentence be imposed." *People v. Quintana*, 332 Ill. App. 3d 96, 109 (2002). In mitigation, a court shall consider: (1) defendant's lack of prior delinquency and criminal conduct or that he has led a law-abiding life for a substantial period of time before the commission of the present crime; (2) whether defendant's criminal conduct was the result of circumstances unlikely to recur; and (3) whether the character and attitudes of defendant indicate that he is unlikely to commit another crime. 730 ILCS 5/5-5-3.1(7)-(9) (West 2016). The weight that the court attributes to any factors in mitigation depends on the particular circumstances of the case. *Kolzow*, 301 Ill. App. 3d at 8.

¶ 18    We review the circuit court's sentencing determination for an abuse of discretion. *People v. Stacey*, 193 Ill. 2d 203, 209 (2000). We will find an abuse of discretion only where the court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the court. *People v. Hall*, 195 Ill. 2d 1, 20 (2000). We will not disturb a sentence within the applicable sentencing range unless the circuit court abused its discretion. *Stacey*, 193 Ill. 2d at 209-10.

¶ 19    At the outset, we note that the statutory sentencing range for a Class X felony predatory criminal sexual assault of a child is 6 to 60 years' imprisonment. See 720 ILCS 5/11-1.40(a)(1), (b)(1) (West 2016). Defendant's 45-year prison sentence is well within the statutory range. Therefore, the sentence is presumptively valid, and defendant bears the burden to rebut this presumption. *People v. Sauseda*, 2016 IL App (1st) 140134, ¶ 12.

¶ 20    During the sentencing hearing, the court expressly stated that it considered the factors in aggravation and mitigation as well as the evidence presented, sex offender evaluation, and the PSI. Defendant cites to nothing in the record that shows the court dismissed any factors in

mitigation, including defendant's age, lack of criminal history, military service, and productive citizenship. The record shows that the court explicitly considered defendant's lack of criminal history and rehabilitative potential. The court was unsure how defendant's age factored into his rehabilitative potential, and thus, did not consider defendant's age when making that particular determination. Instead, the court considered defendant's lack of remorse, accountability, victim-blaming, and attitude displayed in court when reaching its determination. No part of the record indicates that the court refused to consider defendant's age generally, the results of his sex offender evaluation, other mitigating factors, or improperly considered a factor in aggravation when determining defendant's sentence. The court noted that each case is fact specific, and age alone should not determine whether a defendant receives a lower sentence. Ultimately, the court determined that defendant's mitigating evidence did not significantly depreciate the seriousness of the offense or warrant the imposition of a lesser sentence. Instead, the court reasoned that a midrange sentence was necessary to deter others and protect the public. From this record, we conclude that the court properly considered defendant's age and weighed the factors in mitigation, and thus, did not abuse its discretion in sentencing defendant.

¶ 21                                III. CONCLUSION

¶ 22        The judgment of the circuit court of Peoria County is affirmed.

¶ 23        Affirmed.