2024 IL App (2d) 230147-U
No. 2-23-0147
Order filed February 27, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 20-CF-257 |
| FRANCISCO L. MANRIQUEZ, | ) ) ) | Honorable David P. Kliment, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE MULLEN delivered the judgment of the court.
Justices Hutchinson and Schostok concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Defendant's 30-year aggregate sentence for sexually assaulting one daughter and assaulting another daughter (who was seven months' pregnant) when she tried to call for help was not an abuse of discretion where the offenses were severe, serious harm was inflicted, and the court took proper notice of mitigating factors, including defendant's lack of prior criminal history.

¶ 2    Following a jury trial, defendant, Francisco L. Manriquez, was found guilty of two counts of aggravated criminal sexual assault (720 ILCS 5/11-1.30(a)(2) (West 2020)), four counts of criminal sexual assault (*id.* § 11-1.20(a)(2)), and one count of aggravated battery (*id.* § 12-3.05(d)(2)). The victims were his daughters, 19-year-old C.M. and 17-year-old M.M.

¶ 3                                    I. BACKGROUND

¶ 4     Defendant was charged with multiple offenses against C.M. and M.M., including aggravated criminal sexual assault and criminal sexual assault of C.M. and aggravated battery of M.M., who was seven months' pregnant at the time.

¶ 5     The evidence at defendant's jury trial established that, at about 7 p.m. on February 4, 2020, defendant arrived home, where he lived with C.M. and M.M. He spent a few hours on the phone with his wife (C.M. and M.M.'s mother), who had been residing in Mexico since October 2018. After the call, defendant was very upset. C.M. and defendant spent the next several hours talking, with C.M. attempting to console defendant. During that time, C.M. had a glass of wine. Defendant opened a bottle of tequila, and they both drank some. By 2 a.m., C.M. was "[v]ery intoxicated," so rather than go upstairs to her room, she fell asleep on the couch.

¶ 6     Later, C.M. awoke to the sounds of "heavy breathing," "skin smacking," and a "musty kind of smell." She felt her legs spread open and defendant's penis inside her vagina; her head was "banging against the armrest" of the sofa. Defendant grabbed her knees and "pivot[ed]" her to her side. She felt a "thrusting motion," and defendant's penis was still inside her vagina. C.M. had never had sexual intercourse before this incident.

¶ 7     M.M., who had been upstairs sleeping, awoke to moaning sounds. She ran downstairs and saw C.M. lying on the couch "with her head hanging off the couch." C.M.'s pants and underwear were below her knees, and her shirt and bra were pulled up, exposing her breasts. Defendant was "on his knees with his pants to his ankles, holding [C.M.'s] head in front of his private area." M.M. "jumped on [defendant]," "grabbed him by [his] hair," and "ripped him off of [C.M.]." When defendant stood up, M.M. observed that his penis was erect. M.M. tried to leave the room to get

help, but defendant kept stopping her and pushing her back. Eventually, she was able to get help. M.M. was seven months' pregnant at the time.

¶ 8    Police officers who responded to the scene testified that both defendant and C.M. were intoxicated. A detective who interviewed defendant testified that defendant initially denied any sexual contact with C.M. Defendant later stated that he had oral sex with C.M. but that she seduced him and the act was consensual.

¶ 9    After merging certain counts and noting that the sentences for aggravated criminal sexual assault and criminal sexual assault must be served consecutively to both each other and other sentences, the trial court sentenced defendant to 15 years in prison on one count of aggravated criminal sexual assault, 10 years in prison on one count of criminal sexual assault, and 5 years in prison on one count of aggravated battery, for an aggregate sentence of 30 years. The court denied defendant's motion for reconsideration of his sentence. Defendant filed this timely appeal.

¶ 10                                                    II. ANALYSIS

¶ 11    On appeal, defendant argues that the trial court abused its sentencing discretion because his 30-year sentence is "grossly disproportionate to [his] background and risk of recidivism, and to the nature of the offenses." He asks us to reduce his sentence to the minimum aggregate term. We affirm.

¶ 12    It is well established that the trial court is the proper forum to determine a sentence and that its sentencing decision is entitled to great deference and weight. *People v. Latona*, 184 Ill. 2d 260, 272 (1998). This deference is because the trial court, having observed the defendant and the proceedings, has a far better opportunity to consider the relevant sentencing factors than the reviewing court, which must rely on the "cold record." (Internal quotation marks omitted.) *People v. Alexander*, 239 Ill. 2d 205, 213 (2010). " 'The trial judge has the opportunity to weigh such

factors as the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age. [Citations.]' " *Id.* (quoting *People v. Stacey*, 193 Ill. 2d 203, 209 (2000)).

¶ 13    A sentence within the statutory limits will not be disturbed on appeal unless the trial court has abused its discretion. *People v. Flores*, 404 Ill. App. 3d 155, 157 (2010). An abuse of discretion occurs only if the trial court imposes a sentence that varies greatly from the spirit and purpose of the law or is manifestly disproportionate to the nature of the offense. *Id.* A trial court has wide latitude in sentencing a defendant so long as it neither ignores relevant mitigating evidence nor considers improper aggravating factors. *Id.* We presume that the trial court considered all relevant factors in determining the sentence, and that presumption will not be overcome without explicit evidence in the record that the court did not consider the applicable mitigating factors. *Id.* at 158.

¶ 14    In determining an appropriate sentence, relevant considerations include the nature of the crime, public protection, deterrence, punishment, and the defendant's rehabilitative prospects. *People v. Kolzow*, 301 Ill. App. 3d 1, 8 (1998). The weight to give each factor in aggravation and mitigation depends upon the circumstances of the case. *Id.* "The seriousness of the crime is the most important factor in determining an appropriate sentence, not the presence of mitigating factors ***." *People v. Quintana*, 332 Ill. App. 3d 96, 109 (2002). We may not substitute our judgment for the trial court's merely because we might have weighed the pertinent factors differently. *Stacey*, 193 Ill. 2d at 209; see also *People v. Coleman*, 166 Ill. 2d 247, 262 (1995) ("[I]t is not [the reviewing court's] duty to reweigh the factors involved in [the trial court's] sentencing decision.").

¶ 15    Here, defendant was sentenced for aggravated criminal sexual assault, criminal sexual assault, and aggravated battery. Aggravated criminal sexual assault is a Class X felony, subject to

a prison term between 6 and 30 years (720 ILCS 5/11-1.30(d)(1) (West 2020); 730 ILCS 5/5-4.5-25(a) (West 2020)). Criminal sexual assault is a Class 1 felony, subject to a prison term between 4 and 15 years (720 ILCS 5/11-1.20(b)(1) (West 2020); 730 ILCS 5/5-4.5-30(a) (West 2020)). Aggravated battery is a Class 3 felony subject to a prison term between two and five years (720 ILCS 5/12-3.05(h)(1) (West 2020); 730 ILCS 5/5-4.5-40(a) (West 2020)). Because sentences for aggravated criminal sexual assault and criminal sexual assault must be served consecutively to both each other and other sentences (see 730 ILCS 5/5-8-4(d)(2) (West 2020)), defendant faced a sentencing range between 12 and 50 years. Defendant's 30-year sentence was well within the statutory range. Indeed, it was just below the midpoint of 31 years.

¶ 16    Nevertheless, defendant argues that a lesser sentence is warranted because "he had lived a productive and law abiding life for fifty years" and the offense was "aberrant behavior brought about by an upsetting circumstance and extreme intoxication." In particular, defendant points to the fact that he was 53 years old at the time of sentencing, had attended school in Mexico and served in its military, had been married for 30 years, lived in Aurora for over 20 years, was steadily employed in construction, and raised five children: four biological daughters and one relative. He also points to the fact that, on the evening of the incident, he confirmed that his wife had been having an affair and that C.M. knew about it. He was extremely upset and responded by drinking an excessive amount of tequila. In addition, defendant notes that the 30-year sentence requires that he be incarcerated until he is 74 years old, 10 years past his life expectancy in prison.

¶ 17    In sentencing defendant, the trial court noted that it considered (1) the evidence presented at trial, (2) the presentence investigation report (PSI), (3) the financial impact of incarceration, (4) the mitigating evidence, (5) the aggravating evidence, (6) M.M.'s oral victim impact statement, (7) C.M.'s written victim impact statement, and (8) defendant's statement in allocution. In

aggravation, the court specifically found that defendant's conduct caused serious physical and mental harm. The court also found that its sentence was required to deter others. In mitigation, the court gave defendant credit for having no history of prior delinquency or criminal activity. The court specifically declined the State's request to hold defendant's previous traffic offenses against him. The court then stated:

"Nowhere in this case did [defendant] express remorse. He's sorry. He apologized. But when you listen to his statement today, he's more sorry for himself than he is for anything he did to anybody else. Even in the [PSI], he doesn't make any mention of the victims in this case. He takes no responsibility for what he did. He blames alcohol. He tried to believe or get Detective Trujillo at the time to believe that his daughter raped him. And even today, he doesn't take responsibility. He blames the alcohol; his kids really know what happened; they know him; they know it was a mistake.

It wasn't a mistake. It was a crime. You committed a crime. And [the assistant state's attorney] was right when she talked about the one person that a young woman should be able to trust is her father, and you destroyed that trust in the worst possible way.

I don't believe that you are a predator, that you are going to go out on the streets looking for other victims. This was a crime of opportunity, and you took that opportunity, and you destroyed not only your daughter's life but [M.M.'s] life in the same way, all your family, and now you have destroyed your own life."

¶ 18    The record makes clear that the trial court read the PSI and thus was well aware of defendant's background. The court specifically acknowledged defendant's lack of criminal history and found it to be a mitigating factor. The court also noted that it did not believe defendant to be a "predator." The court was also cognizant of the circumstances of the offense. The court's

comments show that, in determining the sentence, it gave significant weight to the seriousness of the offense, the physical and mental harm done to defendant's daughters, and defendant's lack of remorse. A trial court is not required to give more weight to a defendant's rehabilitative potential than to the seriousness of the offense. *People v. Branch*, 2018 IL App (1st) 150026, ¶ 39. In striking a balance between the mitigating and aggravating evidence and taking into consideration the seriousness of the offense, the trial court imposed a sentence below the midpoint of the sentencing range. That sentence did not vary from the spirit and purpose of the law, nor was it manifestly disproportionate to the crime. Thus, the court did not abuse its discretion in sentencing defendant to an aggregate sentence of 30 years in prison. And, as long as a defendant's prison sentence is not otherwise an abuse of discretion, it will not be found improper merely because it may arguably amount to a *de facto* life sentence. *People v. Towns*, 2020 IL App (1st) 171145, ¶ 46.

¶ 19                                        III. CONCLUSION

¶ 20     For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 21     Affirmed.