2025 IL App (2d) 240512-U
No. 2-24-0512
Order filed November 24, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 22-CF-1654 |
| KEITH L. STARKS, | ) ) | Honorable William G. Engerman, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE McLAREN delivered the judgment of the court.
Presiding Justice Kennedy and Justice Schostok concurred in the judgment.

**ORDER**

¶ 1     *Held*:   The trial court considered all applicable mitigating factors in sentencing defendant to nine years in prison for unlawful possession of a controlled substance (cocaine), and the sentence was not an abuse of discretion given defendant's extensive criminal history and other aggravating factors.

¶ 2     Following a jury trial, defendant, Keith L. Starks, was found guilty of (1) unlawful possession of a controlled substance (cocaine) (UPCS) (720 ILCS 570/402(a)(2)(A) (West 2020)) (count II)[1], (2) driving under the influence of drugs (DUI) (625 ILCS 5/11-501(a)(6) (West 2020))

---

[1]Count II of the indictment charged defendant with UPCS under section 402(a)(2)(B) of the Illinois

(count VI), (3) aggravated DUI (*id.* § 11-501(a)(4), (d)(1)(H)) (count IV), and (4) driving while license suspended or revoked (DWLS) (*id.* § 6-303(a)) (count VII). The trial court sentenced defendant to nine years in prison on the UPCS conviction. The court found that the DUI conviction merged with the aggravated DUI conviction under one-act, one-crime principles, and it sentenced defendant to three years in prison on the latter conviction, to be served concurrently with the nine-year sentence. The court did not impose a sentence for the DWLS conviction. On appeal, defendant contends that his nine-year sentence for UPCS is excessive. We affirm and remand with directions.

¶ 3                              I. BACKGROUND

¶ 4        On October 6, 2022, the State filed a seven-count indictment against defendant. In addition to the four counts on which defendant was convicted, defendant was also indicted on one count

---

Controlled Substances Act (Act) (720 ILCS 570/402(a)(2)(B) (West 2020)), which concerns possession of "100 grams or more but less than 400 grams of any substance containing cocaine[.]" But the indictment's allegations provide that defendant "knowingly and unlawfully possessed 15 grams or more but less than 100 grams of a substance containing cocaine." The evidence established that the suspected substance weighed 25.14 grams. Thus, defendant should have been indicted under section 402(a)(2)(A) of the Act (*id.* § 402(a)(2)(A)), which concerns possession of "15 grams or more but less than 100 grams of any substance containing cocaine[.]" The jury was properly instructed in line with section 402(a)(2)(A), and it found defendant guilty of that offense. However, the two "Judgment Order[s]" entered on May 29, 2024, reflect that defendant was convicted under section 402(a)(2)(B), rather than section 402(a)(2)(A). The Department of Corrections website also lists defendant's "OFFENSE" as "POSSESS 100<400 GRAMS COCAINE." See *Internet Inmate Search*, Ill. Dep't. of Corr., https://www.idoc.state.il.us/subsections /search/inms_print.asp?idoc=B06442 (last visited Nov. 12, 2025) [https://perma.cc/K9P6-43EV].

(count I) of unlawful possession with intent to deliver 15 grams or more but less than 100 grams of a substance containing a controlled substance (cocaine) (720 ILCS 570/401(a)(2)(A) (West 2020)).  Two additional charges (counts III and V) were nol-prossed before trial.

¶ 5    The evidence at defendant's trial generally established the following.  Shortly after midnight on September 5, 2022, Elgin police officer Jonathan Taylor was dispatched to investigate a report of a suspicious vehicle in a McDonald's parking lot.  The vehicle, a black pickup truck, was registered to defendant.  Taylor contacted Elgin police officer David Mahan, who was monitoring Elgin's citywide camera system.  Mahan began monitoring the truck using a surveillance camera positioned at a nearby intersection.  Over the next one-and-a-half hours, Taylor drove past the McDonald's about five times on routine patrol and each time observed the truck.  In the meantime, Mahan watched the truck via the surveillance camera.  A video recording of what Mahan observed was admitted into evidence.

¶ 6    Mahan testified that, during the time that he was monitoring the black truck (from "049" to "0141" on the recording), he observed (1) an individual[2] exit the truck and enter a white sedan, which then left the area; (2) a female exit the passenger seat of the truck, walk to the intersection of Summit Street and Dundee Avenue, walk to the other side of the McDonald's, cross the street, and exit from view; (3) an individual[3] exit the McDonald's, approach the driver's side of the truck, stay for a few moments, and return to the McDonald's; (4) the original female return to the truck with a second female and usher the second female to the driver's side open window, where the latter remained for a few moments before leaving on foot; (5) the original female walk to the

_____

[2]Mahan did not specify the individual's gender.

[3]Again, Mahan did not specify the individual's gender.

passenger door, squat, place both hands under her body, remain in that position for a few moments, and then enter the truck; and (6) the truck leave the area. While Mahan was monitoring the truck, he kept in contact with Taylor.

¶ 7 Taylor approached the area to continue his surveillance as the black truck exited the parking lot. Taylor saw the driver, later identified as defendant, and a female occupant. Taylor followed the truck in his marked squad car without activating his emergency lights. When Taylor observed the truck travel on the wrong side of a two-lane road, with its driver's-side tires along the curb, Taylor activated his squad car's emergency lights to effectuate a traffic stop. The truck traveled approximately a quarter mile before stopping. Taylor approached defendant and asked for his information. According to Taylor, defendant was "very, very lethargic and slow in his responses." Taylor testified that "the female passenger was responding for a large portion of the questions[,] and it was more of just a blank stare at [Taylor] than a conversation." At one point, the truck "lurched forward," and defendant "did not appear to know that [the black truck was not in park]." Taylor asked defendant to exit the truck for field sobriety testing. Defendant "had extreme difficulty standing up, balancing" and had to "us[e] the truck to brace himself." Taylor began with the horizontal gaze nystagmus test, but defendant could not follow his directions. Taylor "did not see the nystagmus that comes on under the influence of alcohol," nor did Taylor smell the odor of alcohol on defendant. Taylor determined that defendant was likely under the influence of "some other substance." Taylor did not "continue with a normal field sobriety test due to [his] observations" and his concern for defendant's safety. Taylor arrested defendant, who was then transported to St. Joseph Hospital for treatment. The video footage taken by Taylor's body-worn camera during his interaction with defendant was admitted into evidence.

¶ 8    Taylor searched defendant before he was transported to the hospital. Taylor "located in [defendant's] left jacket pocket multiple bags containing a white—some may be powdery but one of them a significant rock-like substance that is suspect cocaine." Taylor identified the substance recovered from defendant, and it was admitted into evidence. Brianna Simpson, a forensic scientist with the Illinois State Police Crime Laboratory, tested the substance. Simpson testified that the tested substance was "25.1 grams containing cocaine."

¶ 9    Kane County Sheriff's Deputy Sergeant Ryan Monaghan testified as "an expert in the area of narcotics investigation and the field of illegal drug trafficking, distribution[,] and consumption." In his opinion, based on his review of the recovered narcotics, the surveillance video, the body camera video, and the police reports, "[n]arcotics transactions were being conducted from [defendant's] vehicle out to subjects in the community." He testified further that defendant possessed the recovered narcotics "both to personally possess it and to distribute it." According to Monaghan, the female passenger's role was "facilitator."

¶ 10   The parties stipulated to the following. Dr. Maciej Padowski would testify that he treated defendant for "acute intoxication" when he arrived at the emergency room. Defendant's blood tests "showed [the] presence of cocaine, opiates[,] and benzodiazepine." Defendant was treated and discharged "with a diagnosis of polysubstance use disorder and given referrals for substance abuse treatment." He was also provided with "Narcan, a medication that reverses an opioid overdose."

¶ 11   The jury found defendant not guilty of count I (unlawful possession with intent to deliver (*id.*)), but guilty of the remaining counts. Defendant filed a motion for judgment notwithstanding the verdict or a new trial. The trial court heard the motion on May 29, 2024. The court denied the motion and proceeded immediately to sentencing. Regarding the UPCS conviction (count II), the

State indicated that defendant was eligible for extended-term sentencing but that the State was not seeking it. The State asked for a sentence in "the upper term of a normal Class 1 offense," specifically 15 years. In aggravation, it argued that (1) defendant's conduct caused or threatened serious harm (see 730 ILCS 5/5-5-3.2(a)(1) (West 2022)), (2) defendant received compensation for committing the offense (see *id.* § 5-5-3.2(a)(2)), (3) defendant had a history of prior delinquency or criminal activity (see *id.* § 5-5-3.2(a)(3)), and (4) the sentence was necessary to deter others from committing the same crime (see *id.* § 5-5-3.2(a)(7)). The State emphasized defendant's criminal history, stating:

> "[D]efendant was in and out of the Illinois Department of Corrections [(DOC)] for almost all of the decade of the 1990s. A case every year except 1992 probably because he was serving a sentence. Felony offenses in '93, '94, '95, '96, '97, '98. Then moving into the 2000s, it's the same pattern. 2000, 2001, 2003, 2005, 2009, '13, '15. As we get into the 2010s, as the defendant appeared to get older, his criminality certainly has decreased, but also the years that he was sentenced to appears to have increased with the last case in 2015, defendant being sentenced to eight years in the [DOC] for unlawful possession of a controlled substance with intent and five years [DOC] for [aggravated unlawful use of a weapon].
>
> It's not just that. According to the presentence investigation [report] [(PSI)], the defendant was not exactly a model inmate. In just evaluating the defendant's behavior while incarcerated, you will see the defendant had 15 disciplinary actions in the [DOC] since 2003. Not only that, in this case, defendant has multiple diluted tests and simply just not showing up to testing. He indicated he had been using and refused testing."

¶ 12    Defense counsel asked the court to impose the minimum prison sentence—four years—which was based on the weight and type of contraband recovered (25.1 grams of a substance containing cocaine) (see 720 ILCS 570/402(a)(2)(A) (West 2020)).  In mitigation, defense counsel argued that imprisoning defendant would endanger his medical condition (*i.e.*, he had been injured in a bicycle accident three days earlier and planned to seek medical attention for shoulder pain "after court" that day).  See 730 ILCS 5/5-5-3.1(a)(12) (West 2022).  Counsel also noted that defendant was 62 years old.  Counsel noted further that defendant's sentences in previous possession cases were "like one year, then it's like 30 months, and then like 22 months, but it's still building.  It's not an exact line, but it kind of would dovetail into where we are today, which is something around four for [UPCS]."  Counsel acknowledged that, despite the acquittal on count I, the trial court could consider the factual circumstances of the possession-with-intent-to-deliver charge.  However, counsel asked the court to afford weight to the jury's verdict on that count.  Counsel also asked that the court consider defendant's age and his desire to stop using drugs.

¶ 13    Defendant indicated that he did not wish to make a statement in allocution, but he wrote a note for the trial court, which counsel read into the record.  It stated: "I would like to get drug court and I would like to go to a hospital some type of way and I know this is being seen through my eyes like a camera.  Wednesday, May 29th, 2024."

¶ 14    The trial court sentenced defendant to nine years in prison on the UPCS conviction.  In announcing its decision, the court first noted that it considered (1) the trial evidence, (2) the PSI, (3) the financial impact of incarceration, (4) the mitigating evidence, (5) the aggravating evidence, and (6) defendant's written statement in allocution.  The court also noted that "without the agreement of the State's Attorney's Office, the defendant is not eligible and the [c]ourt does not have the ability to sentence him to drug rehabilitation court here in Kane County."

¶ 15    The trial court addressed the evidence in aggravation relating to the UPCS conviction as follows. The court found inapplicable both aggravating factor (a)(1)—that defendant's conduct caused or threatened serious harm (*id.* § 5-5-3.2(a)(1))—and aggravating factor (a)(2)—that defendant received compensation for committing the offense (*id.* § 5-5-3.2(a)(2)). However, the court found applicable aggravating factor (a)(3)—that defendant had a prior criminal history (*id.* § 5-5-3.2(a)(3)). The court noted that the PSI revealed that "defendant has a consistent pattern of arrest and convictions from 1981 through September of 2022" and that "defendant has clearly been in and out of the [DOC], received several sentences of probation[,] and *** has not led a law-abiding life for that period of time." The court also found applicable aggravating factor (a)(7)—that the sentence is necessary to deter others from committing the same crime (*id.* § 5-5-3.2(a)(7))—stating that "[t]here should be a deterrent effect for those who wish to possess and/or distribute illegal substances."

¶ 16    The trial court next addressed mitigation. First, the court noted that defense counsel asked the court to consider mitigating factor (a)(12)—that the imprisonment of the defendant would endanger his medical condition (*id.* § 5-5-3.1(a)(12)). The court found that factor inapplicable, though it said it would inform the sheriff of defendant's possible shoulder injury. The court then stated: "I do not believe that there were any other factors in mitigation that apply to this case. The [c]ourt finds that there are no other factors that apply."

¶ 17    The trial court next noted that the UPCS conviction was "non-probationable" due to defendant's prior Class X felony conviction of unlawful delivery of a controlled substance, which had occurred within the past 10 years. The court then stated:

"So some would argue that this is a—there is no harm to the community, there was no violence, no one was hurt. I think the [c]ourt must consider the fact that this defendant

was in possession of 25.1 grams of cocaine. There is evidence in the record that this amount of cocaine is not for personal use. The [c]ourt did see the video and heard the testimony and that it was alleged that the defendant was selling cocaine from a vehicle that was parked in the McDonald's parking lot in Elgin. The vehicle was observed inside the parking lot for approximately an hour and 40 minutes before the vehicle went out of the parking lot and the police attempted and did stop it.

The defendant clearly has a drug issue. Pursuant to the [PSI], he admitted or advised the court services officer investigator that he continues cocaine use one to two times a week. This defendant has not worked regularly in a job since 2019. His mother was supporting him and wanted him to get a job, but apparently his mother will not allow him to live in the home where she lives.

With regard to drug tests, I will note that the defendant took 49 drug tests while he was on bond. 40 [*sic*] of them were negative. Nine of them were positive or dilute and at some point he stopped going, but 40 of them were negative. So that demonstrates that defendant has the ability to stop using drugs at some point in time.

The defendant is not a high school graduate. He doesn't possess a GED. Again, he really hasn't worked at all since 2019, which is a substantial period of time.

[Defendant], your lawyer has asked for a minimum sentence. A Class 1 felony is punishable by a minimum of four years in the [DOC]. The State has asked for a maximum of 15 years. The State has indicated that you are what's called extended term eligible, which means you could be sentenced between 15 and 30 years in the [DOC]. Your last sentence in the [DOC] was for eight years and that was for either possession with intent to

distribute or distribution of a controlled substance within a thousand feet of a school or prohibited building.

The [c]ourt finds that the defendant—this offense is not indicative of a four-year sentence and it's not indicative of a four-year sentence because of the defendant's criminal history, the fact that he continues to use cocaine, he's not working; and the [Adult Risk Assessment Community Supervision Tool], he scored a 32 which shows he's high risk to engage in future criminal conduct.

On the other hand, I do not believe that a sentence of 15 years in the [DOC] is appropriate in this case either given the defendant's drug history and the facts of this case.

However, with all of the considerations, I believe that an appropriate sentence in this case is nine years in the [DOC]. That will be served unless I'm—unless the parties correct me, that is you are to receive day for day good time on that offense. ***."

As for the remaining convictions, the court found that the DUI conviction merged with the aggravated DUI conviction under the one-act, one-crime rule, and it sentenced defendant to three years in prison on the latter, to be served concurrently with the nine-year sentence for UPCS. The court imposed no sentence on the DWLS conviction.

¶ 18    Defendant filed a motion for reconsideration of his sentence, contending that the trial court "did not fully weigh" defendant's rehabilitative potential. Defendant stated: "The court heard evidence that [defendant] has rehabilitative potential[,] and his lack of formal education, along with his mental health issues, provide context for his actions and highlight the systemic challenges he faces." He argued further that evidence of his "participation in drug court programs indicates an ongoing effort to address his addiction."

¶ 19    Following a hearing, the trial court denied the motion. The court stated:

"In regard to the defense's argument that [defendant] wanted some type of drug rehabilitation program, I will note that in paragraph—or Section 12 titled Criminal Attitudes and Behavioral Patterns in the defendant's [PSI], the defendant told the presentence investigator that he would, quote, [']rather do drug court—do the drug court program again than go back to prison.[']

Additionally, in reviewing the defendant's substance abuse treatment history, he was in the Kane County Drug Rehabilitation Court Program in 2000 and 2001. He was dismissed from a treatment center due to testing positive for cocaine and it was recommended that he needed a higher level of care at the time of his dismissal from the program.

There was no—although he was being drug tested while he was on pretrial release after his trial, he did not go back to testing.[4] There is no indication that he attempted to get into a program himself.

And I would agree with counsel's assertion that he was not eligible for a drug rehabilitation program.

The concern that the [c]ourt has is that *** he has had 13 separate sentences to the [DOC]. The [c]ourt also takes notes [*sic*] of the fact that when he was stopped [while] driving his vehicle in an impaired condition, after being surveilled for a number of hours purportedly while distributing drugs, although that was not proved, the [c]ourt can take notice of the fact that there was over 25 grams of cocaine in his pocket when he was stopped

---

[4]Evidently, the court was referring to the notation in the PSI that defendant was required to undergo drug testing between trial and sentencing but failed to report for any testing.

by the police. That is not—the [c]ourt can consider that is not a personal use amount as the testimony at the trial bore out.

> For those reasons the [c]ourt is standing by its sentence of nine years in the [DOC] and would respectfully deny the defendant's motion to reconsider sentence."

¶ 20　This timely appeal followed.

¶ 21　　　　　　　　　　　　　　　　II. ANALYSIS

¶ 22　Defendant contends that his nine-year sentence for "possession of less than an ounce of cocaine" was excessive. According to defendant, the trial court relied too heavily on defendant's prior criminal history and ignored mitigating factors.

¶ 23　It is well established that the trial court is the proper forum to determine a sentence and that its sentencing decision is entitled to great deference and weight. *People v. Latona*, 184 Ill. 2d 260, 272 (1998). This deference is given because the trial court, having observed the defendant and the proceedings, has a far better opportunity to consider the relevant sentencing factors than the reviewing court, which must rely on the "cold record." (Internal quotation marks omitted.) *People v. Alexander*, 239 Ill. 2d 205, 212-13 (2010). " 'The trial judge has the opportunity to weigh such factors as the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age.' " *Id.* at 213 (quoting *People v. Stacey*, 193 Ill. 2d 203, 209 (2000)).

¶ 24　A sentence within the statutory limits will not be disturbed on appeal unless the trial court has abused its discretion. *People v. Flores*, 404 Ill. App. 3d 155, 157 (2010). An abuse of discretion occurs only if the trial court imposes a sentence that varies greatly from the spirit and purpose of the law or is manifestly disproportionate to the nature of the offense. *Id.* A trial court has wide latitude in sentencing a defendant so long as it neither ignores relevant mitigating

evidence nor considers improper aggravating factors. *Id.* We presume that the trial court considered all relevant factors in determining the sentence, and that presumption will not be overcome without explicit evidence in the record that the court did not consider the applicable mitigating factors. *Id.* at 158.

¶ 25 In determining an appropriate sentence, relevant considerations include the nature of the crime, public protection, deterrence, punishment, and the defendant's rehabilitative prospects. *People v. Kolzow*, 301 Ill. App. 3d 1, 8 (1998). The weight to give each factor in aggravation and mitigation depends upon the circumstances of the case. *Id.* We may not substitute our judgment for the trial court's merely because we might have weighed the pertinent factors differently. *Alexander*, 239 Ill. 2d at 213; *Stacey*, 193 Ill. 2d at 209.

¶ 26 Defendant was convicted of UPCS under section 402(a)(2)(A) of the Illinois Controlled Substances Act (Act) (720 ILCS 570/402(a)(2)(A) (West 2020)), which is a Class 1 felony, subject to a prison term between 4 and 15 years. While the State did not seek, and the trial court did not impose, an extended-term sentence, defendant was eligible for an extended term based on prior felonies. See 730 ILCS 5/5-5-3.2(b)(1) (West 2022). The extended sentence range would have been between 15 and 30 years. See *id.* § 5-4.5-30(a). Here, defendant's nine-year sentence was well within the statutory range of permissible sentences. Indeed, it was just below the midpoint of the nonextended range and significantly below the minimum of the extended range.

¶ 27 Nevertheless, defendant contends that the nine-year sentence should be reduced because the trial court "did not consider the evidence in mitigation as statutorily required." See *id.* § 5-5-3.1(a) (setting forth the grounds to "be accorded weight in favor of withholding or minimizing a sentence of imprisonment"). According to defendant, because "the court heard evidence of [defendant's] long-time *** cocaine addiction, including the fact that he was substantially

impaired at the time of his arrest," along with evidence that he was diagnosed with "polysubstance use disorder," the court erred in failing to consider two relevant statutory mitigating factors. The first is that "[t]here were substantial grounds tending to excuse or justify the defendant's criminal conduct, though failing to establish a defense." *Id.* § 5-5-3.1(a)(4). The second is that

> "[a]t the time of the offense, the defendant was suffering from a serious mental illness which, though insufficient to establish the defense of insanity, substantially affected his or her ability to understand the nature of his or her acts or to conform his or her conduct to the requirements of the law." *Id.* § 5-5-3.1(a)(16).

¶ 28 Defendant acknowledges that, when mitigating evidence is presented at sentencing, a presumption arises that the trial court considered it, and, thus, the defendant must point to something beyond the sentence itself to establish that such evidence was not considered. See *Flores*, 404 Ill. App. 3d at 158. Here, the record establishes that the trial court was *well aware* of, and thoroughly considered, defendant's struggles with addiction. The court made clear, both at sentencing and at the hearing on the motion for reconsideration, that it was familiar with the contents of the PSI, which detailed defendant's history of drug abuse. The court also heard evidence of defendant's emergency room visit, which included the treatment received, blood test results, and diagnosis. The court also saw the bodycam video, which included the officer's attempts at field sobriety testing of defendant.

¶ 29 Nevertheless, defendant argues that the record affirmatively establishes that the trial court did not consider the statutory factors. Defendant points to the court's statement: "I do not believe that there were any other factors in mitigation that apply to this case. The [c]ourt finds that there are no other factors that apply." However, "stating that no statutory factors in mitigation *apply* is different than stating that the trial court did not *consider* a mitigating factor." (Emphasis in

original.) *People v. Newbill*, 374 Ill. App. 3d 847, 854 (2007). Thus, the court's statement does not rebut the presumption that the court considered all mitigating evidence before it and ultimately concluded that no *statutory* mitigating factors applied.

¶ 30   We note, too, that "addiction is not a statutory mitigating factor [citation], so the court 'was under no legal obligation to subscribe to this suggestion.' " *People v. Turner*, 2024 IL App (4th) 230641, ¶ 64 (quoting *People v. Shatner*, 174 Ill. 2d 133, 160 (1996)).   " 'Instead, a history of substance abuse is a "double-edged sword" that the trial court may view as a mitigating *or* aggravating factor.' "   (Emphasis added.)   *Id.* (quoting *People v. Sturgeon*, 2019 IL App (4th) 170035, ¶ 105, quoting *People v. Mertz*, 218 Ill. 2d 1, 83 (2005)).   "Simply because the defendant views his drug abuse history as mitigating does not require the sentencer to do so."   *Shatner*, 174 Ill. 2d at 159.

¶ 31   Here, there is no question that the trial court considered the evidence of defendant's drug addiction as both aggravating—in that it found defense counsel's requested minimum four-year sentence too low—and mitigating—in that it found the State's requested maximum fifteen-year sentence too high.   First, with respect to the defendant's requested sentence, the court stated that "the offense is not indicative of a four-year sentence," in part because of "the fact that [defendant] continues to use cocaine."   Indeed, defendant's continued drug abuse speaks to his lack of rehabilitative potential, especially given the court's additional comments that defendant was "not working" and scored at a "high risk to engage in future criminal conduct."   See *People v. Young*, 250 Ill. App. 3d 55, 65-66 (1993) (finding that the defendant's alcohol abuse, which in some cases may be considered in mitigation, was properly considered as evidence that the defendant lacked rehabilitative potential).   On reconsideration, the court specifically rejected defendant's argument that it did not fully consider defendant's rehabilitative potential and his stated desire for drug

treatment. Specifically, the court noted that (1) in 2000 and 2001, defendant had been dismissed from a treatment center due to testing positive and (2) between trial and sentencing, he did not continue drug testing or attempt to get into a drug program.

¶ 32 Further, it is equally clear that the trial court also gave mitigating weight to defendant's drug addiction, as evidenced by its statement that it did "not believe that a sentence of 15 years in the [DOC] [was] appropriate" given "the defendant's drug history and the facts of this case."

¶ 33 In sentencing defendant, the trial court also properly considered in aggravation defendant's criminal history (see 730 ILCS 5/5-5-3.2(a)(3) (West 2022)), which we note is extensive, and the need to deter others (see *id.* § 5-5-3.2(a)(7)). Indeed, "criminal history alone" may "warrant sentences substantially above the minimum." *People v. Evangelista*, 393 Ill. App. 3d. 395, 399 (2009). Here, defendant had already served time in the DOC for drug offenses, but he was "not deterred by previous more lenient sentences." See *People v. Wilson*, 2016 IL App (1st) 141063, ¶ 13. Thus, the court was well within its authority to give great weight to this factor. Further, despite defendant's claim to the contrary, the court also properly found that a sentence was necessary to deter others. Defendant cites no authority for his proposition that deterrence is not an appropriate consideration when sentencing a defendant for possession of a controlled substance.

¶ 34 The trial court also properly relied on the circumstances of the offense—particularly the amount of cocaine possessed by defendant. Defendant seemingly attempts to minimize the seriousness of the offense by referring to the amount of cocaine he possessed as "less than one ounce," rather than the actual amount—25.1 grams—and by noting that he was found not guilty of intent to deliver. To be sure, the "amount of a controlled substance is relevant to the seriousness of the offense." *People v. Moffitt*, 138 Ill. App. 3d 106, 115 (1985). But it does not weigh in defendant's favor here, where he possessed more than 10 grams over the minimum amount deemed

serious enough to constitute a Class 1 felony. Indeed, the court twice emphasized the amount (in sentencing and on reconsideration), noting that it was not an amount for personal use. It also considered other evidence—such as defendant's conduct at the McDonald's—tending to show that defendant possessed the drugs with the intent to deliver, despite the jury's not guilty verdict. See *People v. Rose*, 384 Ill. App. 3d 937, 941 (2008) ("[a] sentencing court may even consider evidence of crimes of which the defendant has been acquitted," because "a finding of not guilty is not a conclusive finding that the defendant did not commit the crime, but rather means that the State was unable to offer proof beyond a reasonable doubt that he did").

¶ 35    In sum, the record makes clear that the trial court adequately considered the appropriate factors in determining that a nine-year sentence was warranted. Essentially, defendant is asking this court to reweigh the sentencing factors and substitute our judgment for that of the trial court. We cannot do this. See *Alexander*, 239 Ill. 2d at 214-15. We find that the nine-year sentence imposed on defendant was not " 'greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense.' " *Id.* at 215 (quoting *Stacey*, 193 Ill. 2d at 210). Accordingly, we affirm.

¶ 36    However, because the judgment orders of May 29, 2024, incorrectly state that defendant's conviction of UPCS on count II was under section 402(a)(2)(B) of the Act (720 ILCS 570/402(a)(2)(B) (West 2020)) (possession of 100 grams or more but less than 400 grams of any substance containing cocaine) when, in fact, he was convicted under section 402(a)(2)(A) of the Act (*id.* § 402(a)(2)(A) (possession of 15 grams or more but less than 100 grams of any substance containing cocaine)), we remand for the trial court to modify those orders to reflect the proper statutory section for count II. The court shall transmit copies of the amended orders to the DOC so that it may correct its records.

¶ 37                                III. CONCLUSION

¶ 38    For the reasons stated, we affirm the judgment of the circuit court of Kane County and remand for (1) modification of the May 29, 2024, judgment orders to reflect that defendant's conviction of UPCS on count II was under section 402(a)(2)(A) of the Act and (2) transmittal of those amended orders to the DOC.

¶ 39    Affirmed and remanded with directions.